[No. 48260–8.   En Banc.   July 8, 1982.]

LONE STAR INDUSTRIES, INC., *Appellant,* v. THE DEPARTMENT OF REVENUE, *Respondent.*

*Bogle & Gates, John T. Piper, D. Michael Young,* and *Donald S. Cooper,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Michael Madden* and *Andrew Harvard, Assistants,* for respondent.

STAFFORD, J.—The sole issue is whether the purchase of iron grinding balls and firebrick, used in the manufacture of cement, is subject to a retail sales tax (RCW 82.08) and use tax (RCW 82.12). The Department of Revenue (Department) ruled that the purchases were subject to taxation and Lone Star Industries, Inc. (Lone Star) appealed that decision to the Superior Court. The trial court denied Lone Star's motion for summary judgment and granted the Department's cross motion for summary judgment. Lone Star's appeal was certified to this court by the Court of Appeals. We reverse the trial court.

The stipulated facts reveal that Lone Star produces Portland cement. The manufacturing process begins by making a slurry of crushed limestone, iron, silica, chemical "molasses" and water. The slurry is placed in the "raw" grinding mill where thousands of iron grinding balls mix with the other material and grind it to a fine consistency. Thereafter, the ground mixture is placed in a kiln and burned. The material that emerges from the kiln is in the form of round, hard lumps called "clinker". The clinker is mixed with a small amount of gypsum and placed in the "finish" grinding mill. At that point more iron grinding balls are added and the clinker is ground to a fine powder.

In both the "raw" and "finish" mills the grinding action wears down 90 percent of each iron grinding ball thus adding iron, a necessary ingredient of the finished Portland cement. The grinding balls contribute approximately 371,833 pounds of iron to Lone Star's annual output of cement. Another 25,181,501 pounds of iron is added from

other sources to make up the full complement of iron. It is agreed the iron grinding balls are used for the primary purpose of grinding the raw materials and clinker and not for the primary purpose of providing iron content to the cement.

The kiln, which is heated to transform the slurry into clinker, is lined with firebrick. The firebrick is primarily composed of silica, aluminum, iron and lime, all of which are essential ingredients of Portland cement. During the heating process 50 percent of the firebrick fuses with the clinker thus becoming a part of the finished product. In this way the firebrick contributes approximately 16,000 pounds of iron, 46,000 pounds of lime, 75,000 pounds of aluminum and 84,000 pounds of silica annually. Lone Star is required to supply an additional 25,181,501 pounds of iron, 551,110,300 pounds of lime, 44,088,824 pounds of aluminum and 181,018,537 pounds of silica annually to make the finished product. It is agreed the firebrick is used primarily for the purpose of lining the kiln and not for the primary purpose of introducing silica, aluminum, iron and lime into the cement. Nevertheless, more iron grinding balls and firebrick are added on an average of once every two months.

It is the Department's position that the iron grinding balls and firebrick are not purchased *primarily for the purpose* of introducing ingredients or components into the cement. Rather, they are durable goods and a part of the machinery that manufactures cement and thus are subject to taxation as "retail sales". On the other hand, Lone Star contends the sales of grinding balls and firebrick fall within RCW 82.04.050 and are not taxable as "retail sales" because they are consumed in the manufacturing process and physically become ingredients or components of the finished product during the manufacturing process.

Insofar as we are concerned here, the sales tax is imposed on "retail sales" of tangible personal property and the use tax is imposed on the privilege of using such tangible personal property if the user has not been previously taxed at

the time of sale. The sales tax is imposed by RCW 82.08-.020 which provides in part:

> There is levied and there shall be collected a tax *on each retail sale . . .*

The use tax is imposed by RCW 82.12.020 which provides in part:

> There is . . . levied and there shall be collected . . . a tax . . . for the privilege of *using . . . as a consumer* any article of tangible personal property *purchased at retail . . .*

(Italics ours.) Tangible personal property is not subject to the use tax if the present user has already paid a sales tax for the property pursuant to RCW 82.08. RCW 82.12.0252. Thus, the definition of the term "retail sale" is determinative of whether either a sales or use tax may be applied.

RCW 82.08.010(4) and RCW 82.12.010(5) each provide for application of the definitions in RCW 82.04 to sales and use taxes. RCW 82.04.050 which defines "sales at retail" or "retail sale" is the focal point of the dispute between the Department and Lone Star. It provides in pertinent part:

> "Sale at retail" or "retail sale" means every sale *of* tangible personal property . . . to all persons . . . *other than a sale to a person who . . .* (c) *purchases for the purpose of consuming the property purchased in producing for sale a new article* of tangible personal property or substance, *of which such property becomes an ingredient or component* or is a chemical used in processing, when the primary purpose of such chemical is to create a chemical reaction directly through contact with an ingredient of a new article being produced for sale . . .

(Italics ours.)

Although RCW 82.04.050 contains no "primary purpose test" other than for the use of chemicals, which are not here involved, the Department has supplied such a test by its adoption of WAC 458–20–113 (Rule 113). Rule 113 reads in pertinent part:

> Where an article purchased serves a dual purpose, *tax liability* under the retail sales tax is *determined by the*

*primary purpose for which the article is purchased.* The fact that a portion of the article purchased actually becomes a physical part of the new article produced for sale is not in itself sufficient to constitute the sale thereof a sale at wholesale, *unless such use is the primary purpose for which the article was purchased.*

(Italics ours.) The Department asserts its authority to promulgate the "primary purpose test" stems from RCW 82.32.300 which authorizes it to make rules having the force and effect of a statute if not inconsistent with the governing statute. RCW 82.32.300. *See Kitsap–Mason Dairymen's Ass'n v. State Tax Comm'n,* 77 Wn.2d 812, 815, 467 P.2d 312 (1970). According to the Department, Rule 113 merely fleshes out RCW 82.04.050 insofar as it addresses the multiple use of material not specifically addressed by the statute. Thus, it is urged, the purchase of grinding balls and firebrick is subject to sales and use taxes because the primary use for which the grinding balls and firebrick are purchased is the production of cement as distinguished from being an ingredient or component of cement.

We do not agree with the Department's position. While RCW 82.32.300 authorizes the Department to make rules necessary to enforce RCW 82.04 through RCW 82.12, it also requires that such rules be consistent with the applicable statutes. Thus, Rule 113 is invalid if it imposes a "primary purpose test" more broadly than authorized by RCW 82.04.050.

■■ RCW 82.04.050 makes it clear that a sale to one who purchases tangible personal property for the purpose of consuming it in the production of a *new* article of tangible personal property of which the original property becomes an ingredient or component is not a "retail sale" for taxation purposes. RCW 82.04.050 does not require that the tangible personal property so purchased be acquired *primarily for the purpose* of such consumption in order to avoid taxation as a "retail sale". In contrast, the purchase of chemicals used in processing escapes taxation only if the *primary purpose* of such chemical is to create a reaction. In

short, in determining the applicability of the tax, there is no "primary purpose test" required for property that becomes an ingredient or component of the new article. Nevertheless, Rule 113 imposes a "primary purpose test" on both ingredients *and* chemicals even though the Legislature treated them differently. Consequently, Rule 113 is invalid insofar as it impermissibly imposes a tax on items which are not mentioned in the statute as taxable, *i.e.*, items which actually become ingredients or components of the newly created article. The trial court erred in applying the "primary purpose test" to ingredients or components. In doing so it ignored the plain language of RCW 82.04.050.[1]

In addition to employing the "primary purpose test", the trial court concluded the grinding balls and firebrick were in fact purchased for the purpose of becoming a part of the manufacturing plant or machinery which produced the cement rather than being purchased to become an ingredient of cement. In this regard the trial court again committed error. In reaching its conclusion the trial court ignored the stipulated fact that ultimately the iron from the grinding balls and the iron, silica, aluminum and lime from the firebrick actually became necessary ingredients or components of the cement. The trial court's holding seems to be based on the assumption that since the grinding balls and firebrick supply only a minimal amount of the iron, silica, aluminum and lime needed in the cement they may be deemed only incidental and not necessary ingredients or components of cement.

Although the grinding balls and firebrick provide only a small percentage of the total ingredients involved in the

---

[1]The history of RCW 82.04.050 reveals that originally the statutory definition contained no "primary purpose test", even as to chemicals. *See* Laws of 1935, ch. 180, § 5; Laws of 1943, ch. 156, § 2. Thus, when the Legislature adopted the "primary purpose test" and applied it solely to chemicals we must assume the Legislature made an intentional differentiation between ingredients and chemicals. *See Weyerhaeuser Co. v. Department of Rev.*, 16 Wn. App. 112, 117 n.3, 553 P.2d 1349 (1976).

production of cement, the ingredients they do supply are no less necessary to the production of cement. Further, the fact that the grinding balls and firebrick are used in the manufacturing process does not preclude them from being an ingredient or component. To hold otherwise would require an indirect application of the "primary purpose test" rejected heretofore. The important fact is that the iron grinding balls and firebrick actually supply essential ingredients or components of the finished product and not whether the percentage supplied is large or small. *Bullock v. Lone Star Indus., Inc.*, 584 S.W.2d 386 (Tex. Civ. App. 1979); *Boswell v. Abex Corp.*, 55 Ala. App. 477, 317 So. 2d 314 (1975); *see also State v. United States Steel Corp.*, 281 Ala. 553, 206 So. 2d 358 (1968); *State v. Southern Kraft Corp.*, 243 Ala. 223, 8 So. 2d 886 (1942); *but see Union Portland Cement Co. v. State Tax Comm'n*, 110 Utah 135, 170 P.2d 164 (1946).

Inasmuch as the iron grinding balls and firebrick supply necessary ingredients or components of the cement and in fact become a part thereof, they do not fall within the definition of "retail sales". Thus, they are not subject to taxation. Further, their purchase and use are not subject to the "primary purpose test" promulgated by Rule 113. Rule 113 clearly exceeds the bounds of RCW 82.04.050.

The trial court is reversed and the cause is remanded for entry of a summary judgment in favor of Lone Star.

BRACHTENBACH, C.J., and ROSELLINI, UTTER, DOLLIVER, WILLIAMS, DORE, DIMMICK, and PEARSON, JJ., concur.