[No. 7719–1–II. Division Two. June 25, 1985.]

V. R. VAN DYK, *Respondent,* v. THE DEPARTMENT
OF REVENUE, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *James R. Tuttle, Assistant,* for appellant.

*James A. McDevitt,* for respondent.

WORSWICK, C.J.—The Washington State Department of Revenue appeals a judgment ordering a refund of use taxes assessed against V. R. Van Dyk, doing business as Inland Foundry Company, on the value of coke used in the manufacture of iron products. Van Dyk cross–appeals, contending the refund should have been larger. We affirm.

Van Dyk operates an iron refinery. He manufactures gray and ductile iron products from scrap iron, coke, and other ingredients, by melting and refining the scrap in a large cupola. At the beginning of the process, a bed of coke is ignited in the bottom of the cupola by propane torches and blasts of air. As the bed heats up, charge ingredients—scrap iron, limestone, and more coke—are added. As the mixture is fired, the scrap iron melts and mixes with the carbon from unburned coke present in both the bed and the charge.

The coke is about 92 percent carbon. As it burns, the carbon unites with oxygen in the air in a chemical reaction. The carbon does not chemically react through contact with any of the ingredients of the final products. Instead, some of the carbon, while retaining its original chemical identity, mixes with the molten scrap iron. This carbon itself becomes a necessary ingredient of the final products. About 4 percent of the total carbon in the coke becomes an ingredient of gray iron, and about 13 percent inheres in ductile iron. The rest is burned.

Van Dyk paid use taxes on the coke until 1976, when he decided to dispute validity of the tax. The Department conducted an audit in December of 1979, and ordered Van Dyk to pay the disputed taxes. He then petitioned the Department for a refund of taxes paid in 1975 and 1976, and for a reversal of the 1979 assessment. After administrative hearings, the petition was denied. Van Dyk paid the

disputed taxes and in 1980 filed this action for a refund and for declaratory relief in superior court (RCW 82.32.180).

The trial court granted summary judgment in favor of Van Dyk for the relief requested. It also granted the Department's cross motion for partial summary judgment, limiting the refund to taxes paid during the 4 years prior to the calendar year in which this action was filed. RCW 82.32.060; RCW 82.32.180.

The Department contends that Van Dyk is subject to the tax under RCW 82.12.020 because the law does not favor him with an exemption. We disagree.

Use taxes are imposed on any person who uses an item of tangible personal property as a consumer. RCW 82.12.020. Consumer is defined by RCW 82.04.190.[1] The tax applies in the absence of a statutory exemption. Van Dyk claims exemption under RCW 82.04.190(1)(c), which reads as follows:

> [Consumer means any person who uses an article of tangible personal property other than for the purpose] of consuming such property in producing for sale a new article of tangible personal property or a new substance, of which such property becomes an ingredient or component or as a chemical used in processing, when the primary purpose of such chemical is to create a chemical reaction directly through contact with an ingredient of a new article being produced for sale;

■■ This provision creates two distinct exemptions which, for convenience, we will call the ingredients exemption and the chemicals used in processing exemption. Van Dyk's coke does not qualify for the chemicals used in processing exemption because it does not chemically react with any ingredient of the final product. *Northwest Steel Rolling Mills, Inc. v. Department of Rev.,* 40 Wn. App. 237, 698 P.2d 100 (1985). However, it does undergo a chemical reaction with the air by burning. Because of this, the Department contends, it is a chemical and can only qualify for exemption as a chemical used in processing. Because it does

---

[1]RCW 82.12.010(5) adopts the definition for purposes of the use tax.

not so qualify, argues the Department, it cannot be exempt. The Department's position, simply stated, is that a chemical that undergoes any chemical reaction during the manufacturing process cannot be an ingredient. So stated, the proposition refutes itself.

The Department contends that *Pacific Northwest Alloys, Inc. v. State*, 49 Wn.2d 702, 306 P.2d 197 (1957), being the closest factually to this case and not having been overruled, is controlling. We disagree. In *Pacific*, the taxpayer manufactured ferrosilicon, the components of which are iron and silicon. It used a furnace heated by an electric current passed among three carbon electrodes that protruded about 5 feet into the raw materials in the furnace. As the materials heated, some underwent a chemical reaction creating silicon. Part of the carbon from the electrodes entered into the same reaction, while an undetermined amount oxidized and was wasted. The silicon then united with iron in the materials to form ferrosilicon. The taxpayer argued that the electrodes, which were completely consumed in the process, were exempt from use taxes *as chemicals used in processing*. The court disagreed because the primary purpose of the electrodes was to generate heat rather than to enter into the silicon–forming reaction. In so holding, the court considered only the chemicals used in processing exemption.

The Department argues that *Pacific* is authority for the proposition that a chemical cannot fall under the ingredients exemption. We cannot read the case this way, for it is apparent that only the chemicals used in processing exemption was considered. *See Pacific Northwest Alloys, Inc.*, 49 Wn.2d at 704–05.

The Department next contends that its own regulation, WAC 458–20–113, is controlling.[2] The coke, it argues, is

---

[2]The pertinent part of the regulation reads as follows:

"Articles Purchased for Dual Purposes. Where an article purchased serves a dual purpose, tax liability under the retail sales tax is determined by the primary purpose for which the article is purchased. The fact that a portion of the article purchased actually becomes a physical part of the new article produced for sale is

used for dual purposes, both as a chemical and as an ingredient, and the regulation imposes a primary purpose test to determine whether such an article is to be taxed. Because Van Dyk's coke is used primarily to create a nonexempt chemical reaction (combustion) rather than to provide an ingredient (carbon), under the regulation it would be taxable. We agree that the regulation would require this result. We do not agree that it is controlling.

The Department asserts that, because the regulation has existed in essentially its present form since 1936, it has the force of law because of legislative acquiescence. *Newschwander v. Board of Trustees of State Teachers' Retirement Sys.*, 94 Wn.2d 701, 620 P.2d 88 (1980). The identical argument was rejected in *Lone Star Indus., Inc. v. Department of Rev.*, 97 Wn.2d 630, 647 P.2d 1013 (1982).

*Lone Star* held this very regulation invalid insofar as it attempted to apply a primary purpose test to the ingredient exemption. 97 Wn.2d at 634.[3] RCW 82.04.190(1)(c) applies a primary purpose test only to the chemicals used in processing exemption. The regulation imposes it on both exemptions. Thus the regulation was invalidated as inconsistent with the statute. *Lone Star,* 97 Wn.2d at 634. The Department attempts to distinguish *Lone Star* because the articles at issue there were not involved in a nonexempt chemical reaction. This is a distinction without a difference, which ignores the clear holding of the case.

No court considering this regulation has been impressed

not in itself sufficient to constitute the sale thereof a sale at wholesale, unless such use is the primary purpose for which the article was purchased. Thus, the sale of coal to a cement manufacturer which is used primarily as a fuel for producing heat is a taxable retail sale even though the ash from the burned coal is blown into the cement mixture and actually remains an ingredient thereof. Likewise the sale of coke to a foundry to produce heat for melting iron or steel is a taxable retail sale, although a secondary purpose in using coke is to introduce carbon into the metal." WAC 458–20–113.

[3]*Lone Star* specifically discusses RCW 82.04.050 in this context. It applies equally to RCW 82.04.190, because the essential terms in both statutes are identical.

by the length of time it has been in the administrative code, and for good reason. The taxing statute as enacted in 1935 contained no primary purpose test at all. Laws of 1935, ch. 180, § 5(d), p. 711. It was amended three times after 1936 without adding the test.[4] The 1943 amendment adding the test did so only in regard to the chemicals used in processing exemption. Laws of 1943, ch. 156, § 5(d), p. 490. This history shows no legislative acquiescence in the Department's view of the law. *Lone Star,* 97 Wn.2d at 635 n.1; *see also Weyerhaeuser Co. v. Department of Rev.,* 16 Wn. App. 112, 117 n.3, 553 P.2d 1349 (1976).[5]

The Department next urges, even in the face of *Lone Star,* that we adopt a judicial primary purpose test similar to that in WAC 458–20–113. We decline. This is for the Legislature to do, if it wishes. Moreover, it seems to us that the Legislature has already spoken quite clearly.

It has created two separate exemptions in RCW 82.04-.190(1)(c). *See Weyerhaeuser,* 16 Wn. App. at 116 (discussing "retail sales"). The chemicals used in processing exemption is narrow, requiring that the chemical involved be used for the primary purpose of entering into a reaction because of its contact with an ingredient in a finished product. *Northwest Steel Rolling Mills, Inc. v. Department of Rev., supra.* This permits taxation of chemicals exhausted in processing which do not directly contribute to the finished product. The ingredients exemption is broader, requiring only that the article inhere in the final product.

The Department admits, as it must, that all articles are ultimately composed of chemicals. *See Webster's Third New International Dictionary* 384 (1969) (definition of chemistry). This exposes the flaw in the Department's position. By applying a primary purpose test to any chemi-

---

[4]Laws of 1937, ch. 227, § 5(d), p. 1141; Laws of 1939, ch. 225, § 5(d), p. 980; Laws of 1941, ch. 178, § 5(d), p. 483.

[5]Indeed, we note the Department proposed an amendment to WAC 458–20–113 in 1983 to bring it into conformity with the *Lone Star* holding. State Register 83–04–063, at 141 (1983). This amendment was never adopted.

cal, even though intended as an ingredient, the ingredient exemption would be destroyed altogether. As *Lone Star* points out, this was not the intent of the Legislature. It is basic that, where the Legislature uses certain statutory language in one instance and different language in another, there is a difference in legislative intent. *United Parcel Serv., Inc. v. Department of Rev.*, 102 Wn.2d 355, 687 P.2d 186 (1984). We cannot change that intent here by effectively eliminating the broader ingredient exemption from the statute through the judicial construction advocated by the Department. *Anderson v. Seattle*, 78 Wn.2d 201, 471 P.2d 87 (1970); *King Cy. v. Seattle*, 70 Wn.2d 988, 425 P.2d 887 (1967).

Finally, the Department urges us to adopt an apportionment test, whereby only the percentage of Van Dyk's coke that ultimately becomes an ingredient is exempt. We decline. Again, this would indirectly apply a primary purpose test beyond what was authorized by the statute. The important fact for application of the ingredient exemption is that a necessary ingredient is supplied, not that the quantity is small. *Lone Star*, 97 Wn.2d at 635–36.

■ On cross appeal, Van Dyk argues that he is entitled to a refund of use taxes paid in 1975, despite the 4–year limitation on refunds imposed in RCW 82.32.060 and RCW 82.32.180 (Van Dyk filed his request before the Department in 1979 but brought this action before the court in 1980). The short answer is that Van Dyk did not continue his action against the Department by appealing to the Board of Tax Appeals (RCW 82.03.190) before requesting judicial review. *See* RCW 82.03.180. Instead he filed a separate action. *Pettit v. Board of Tax Appeals*, 85 Wn.2d 646, 538 P.2d 501 (1975); *Transamerica Title Ins. Co. v. Hoppe*, 26 Wn. App. 149, 611 P.2d 1361 (1980). Thus the time limitation in RCW 82.32.060 is measured from the filing of this lawsuit in court.

78

Affirmed.

REED and PETRICH, JJ., concur.

Review denied by Supreme Court September 20, 1985.