OPINION
 

 Per Curiam:
 

 Respondent Nevada Cement Company (“Nevada Cement”) purchases steel grinding balls, steel kiln chains, kiln bricks and castable materials for use in the manufacturing of cement. Nevada Cement paid either sales or use tax when it purchased those items and later sought a refund of the taxes paid. Appellant Nevada Tax Commission (“Commission”) disagreed and determined that the items were not exempt from the sales tax. For the reasons discussed herein, we conclude that the Commission properly concluded that the items were subject to tax. The district court, therefore, erred in reversing the decision of the Commission.
 

 FACTS
 

 Nevada Cement manufactures and sells Portland Cement. Portland Cement is a chemical bonding agent which, when mixed with water and aggregate, produces ready-mix concrete. Portland Cement is composed of specific proportions of limestone, clay, gypsum, iron, and silica. Throughout the manufacturing process, measurements are taken to evaluate and regulate the amounts and proportions of these ingredients in the product.
 

 The manufacturing process is a vigorous, heat-intensive, abrasive process. It begins by crushing limestone, clay, and iron into a raw mix. The raw mix is then heated in the kiln to temperatures over 2,000 degrees. The extreme heat is distributed throughout the mix by the kiln chain. A chemical reaction causes some of the mix to liquefy and the raw mix turns into “clinker,” which is a rock-like substance. The clinker is cooled, then mixed with gypsum and crushed into a fine powder, which is the finished product.
 

 During the manufacturing process, various components become disintegrated and are incorporated into the product. These include the steel grinding balls, which crush the raw mix and the clinker. The steel kiln chain also gradually disintegrates in the kiln and becomes part of the raw mix. Next, the kiln brick, which is made of cement-like materials and lines the kiln, gradually disintegrates
 
 *879
 
 and becomes incorporated into the product. The portion of the kiln brick that does not completely disintegrate into the raw mix in the kiln is removed from the kiln, crushed and introduced back into the raw mix. There are also castables, which are made of cement-like materials and line the passageways through which the product passes. The castables gradually disintegrate and are incorporated into the product. The portion of the castables that does not completely disintegrate is removed, crushed, and introduced back into the raw mix.
 

 The steel grinding balls, steel kiln chains, kiln brick and castables are composed of iron alumina and silica elements, which are necessary ingredients of Portland Cement. These items are purchased both in Nevada and outside Nevada by Nevada Cement. The items are eventually wholly incorporated into the cement during the manufacturing process. Annually, out of 740,000 tons of raw mix material, approximately 21,000 tons consist of iron. Approximately one percent of that figure comes from the wearing down of the steel parts.
 

 Nevada Cement initially paid either sales or use tax when it purchased the steel grinding balls, steel kiln chain, kiln brick and castable materials. Thereafter, Nevada Cement determined that these items were not subject to taxation and requested a refund of the taxes paid from the Nevada Department of Taxation (“Department”).
 

 The taxes at issue in this case are Nevada’s sales and use taxes, which are codified under NRS Chapters 372 and 374. The Sales and Use Tax Act in NRS Chapter 372 was adopted during the 1955 legislative session and became effective on July 1, 1955. The sales and use taxes are imposed on items sold at retail.
 

 On February 29, 1996, the Department issued a Notice of Audit Deficiency in the amount of $38,496.23 to Nevada Cement. Nevada Cement filed a timely Petition for Redetermination of the Audit Deficiency. Nevada Cement’s petition included an appeal of the Department’s denial of its refund claim concerning its purchases of eleven different items, some of which were substantially incorporated and some of which were wholly incorporated into the final product. The audit deficiency was revised to $5,878.42, and Nevada Cement paid this in full. The refund claim then proceeded to an administrative hearing. At the administrative hearing, the Department’s counsel conceded that of the eleven items, the steel grinding balls, steel kiln chain, kiln brick and castable materials were incorporated into the finished product and should be exempt from the sales and use tax. On October 18, 1996, the Department hearing officer issued his decision denying Nevada Cement’s entire refund claim.
 

 Nevada Cement appealed to the Commission, and an adminis
 
 *880
 
 trative hearing was held. On April 23, 1997, the Commission issued its decision affirming the hearing officer’s decision denying Nevada Cement’s entire refund claim. Nevada Cement filed a petition for judicial review with the district court. In the petition, Nevada Cement abandoned its claim regarding the seven items that were not completely incorporated into the cement and pursued only the portion of the refund claim relating to the remaining four items (the steel grinding balls, steel kiln chain, kiln brick and castables) that were wholly incorporated into the cement. On September 8, 1998, the district court reversed the decision of the Commission and granted Nevada Cement’s refund claim.
 

 The district court determined that iron alumina and silica are necessary components of Portland Cement, the four items at issue were composed of these elements, and the items contribute significant amounts of these ingredients to the cement. The district court concluded that the standard approved by the Attorney General in Op. Nev. Att’y Gen. 74 (June 24, 1955) (“Opinion 74”) established a physical-ingredient test to determine exclusion from the sales and use tax and rejected a primary purpose test. The district court also held that the administrative decisions had erroneously adopted a primary purpose test. The district court also held that the steel grinding balls, steel kiln chain, kiln bricks, and castable materials were excluded from taxation under the physical-ingredient test and that Nevada Cement was entitled to a refirnd of the taxes paid on the items, with interest. The Commission subsequently appealed.
 

 DISCUSSION
 

 The burden of proof is on the party attacking or resisting an administrative agency’s decision.
 
 See
 
 NRS 233B. 135(2). Although this court shall not substitute its judgment for that of the agency on a question of fact, review of questions of law, including a district court’s interpretation of statutes, is de novo.
 
 See
 
 NRS 233B. 135(3); State, Dep’t. of Mtr. Vehicles v. Frangul, 110 Nev. 46, 48, 867 P.2d 397, 398 (1994). Additionally, this court has held that “[t]ax exemptions are strictly construed in favor of finding taxability and that any reasonable doubt about whether an exemption applies must be construed against the taxpayer.” Shetakis Dist. v. State, Dep’t Taxation, 108 Nev. 901, 907, 839 P.2d 1315, 1319 (1992).
 

 The question of whether to apply the “physical-ingredient” test or the “primary purpose” test is an issue of first impression before this court. Several other jurisdictions have split between the two tests. These jurisdictions have dealt with statutes having sim
 
 *881
 
 ilar language that permit exemption from sales or use tax items which enter into or become an ingredient or part of a finished product. Alabama, Georgia, Missouri, Nebraska, New York, Texas, and Washington all appear to follow the physical-ingredient rule.
 
 [1]
 
 Meanwhile, Arkansas, California, Colorado, Illinois, Ohio, and Tennessee have applied the primary purpose test.
 
 [2]
 

 Nevada Cement argues that the district court properly applied the physical-ingredient test to determine that the items at issue in the present case are exempt from taxation based on the Attorney General’s Opinion 74, which interprets NRS 372.080. Under the physical-ingredient test, when an item becomes a physical ingredient or a component of the finished product, it is a sale for resale, which is excluded from taxation.
 

 The Nevada sales tax is imposed on the retail sale of tangible personal property to consumers.
 
 See
 
 NRS 372.105; NRS 374.110. A use tax is levied when a Nevada consumer purchases retail goods out of state, thus preventing avoidance of the sales tax.
 
 See
 
 NRS 374.190; NRS 372.185. This use tax is imposed on a purchaser based on the purchaser’s storage, use or consumption of the goods in Nevada.
 
 See
 
 NRS 372.185.
 

 The definitional statutes exclude from sales tax a purchase for “resale in the regular course of business” and exclude from the use tax a purchase for “sale in the regular course of business.”
 
 See
 
 NRS 372.050; NRS 372.075. “Storage” and “use” do not include the keeping, retaining or exercising of any right or power over tangible personal property for the purpose of “being processed, fabricated or manufactured into, attached to, or incorporated into, other tangible personal property to be transported outside the state and thereafter used solely outside the state.” NRS 372.080. Nevada Cement argues that this is a clear statement of the physical-ingredient test.
 

 On May 23, 1955, the Nevada Tax Commission adopted Ruling No. 9. This ruling provides guidance on the resale exclusion as it applies to property used in manufacturing. The rule states that the
 
 *882
 
 sales and use tax “applies to the sale of tangible personal property to persons who purchase it for the purpose of use in manufacturing, producing or processing tangible personal property and not for the purpose of physically incorporating it into the manufactured article to be sold.” Nevada Cement argues that this ruling does not require that an item be purchased
 
 solely
 
 for the purpose of incorporation into the finished product. Rather, Nevada Cement argues that “dual-purpose” items may be excluded from taxation as long as one purpose is the physical incorporation of the item into the finished product.
 

 Nevada Cement also cites Nevada Tax Commission Ruling No. 47, adopted on May 23, 1955. This ruling addresses the resale exclusion as it applies to property purchased for use in the manufacture of printed matter. The rule reads, in part, that the printers “are the consumers of all materials which do not become an ingredient part of the printed job.” Nevada Cement argues that this is a clear expression of the physical-ingredient test; a printer must pay sales or use tax on purchases of items that do not become physically incorporated into the final product.
 

 In further support of the application of the physical-ingredient test, Nevada Cement points to Opinion 74. Opinion 74 examined the definition of “storage” and “use” to determine whether use of scrap iron in the Nevada portion of a multi-state mining process was excluded from Nevada’s use tax. The scrap iron was used to precipitate copper out of a copper sulphate solution. In this process, some of the iron was absorbed into the copper precipitates, and the remainder of the iron lost its physical identity and became a part of the iron sulphate solution. The copper precipitate was then transported outside Nevada for further refining, which removed the iron from the copper precipitate and produced refined copper.
 
 See
 
 55-74 Op. Att’y Gen. 180-81 (1955).
 

 Opinion 74 cites State v. Southern Kraft Corporation, 8 So. 2d 886 (Ala. 1942), as the case in which the circumstances and conditions best approximated those at issue in Opinion 74.
 
 Southern Kraft
 
 concerned chemicals used in an Alabama paper manufacturing process. The court in
 
 Southern Kraft
 
 held that the chemicals were excluded from taxation because they “did, in fact, enter into and become a component part of the finished pulp or paper, and ... a chemical analysis of the completed product would reveal the exempt ingredients.” 55-74 Op. Att’y Gen. 181 (1955).
 

 The iron in Opinion 74 was a dual-purpose item, serving two roles in the manufacturing process: it produced a chemical reaction, which caused the copper to precipitate, and the iron also became incorporated as an ingredient of the copper precipitate. Similarly, in the present case, the steel grinding balls, steel kiln
 
 *883
 
 chains, kiln bricks and castable materials also serve dual purposes: the items assist the manufacturing process, but also gradually disintegrate and become a necessary part of the final product.
 

 Unlike the present case, the iron in Opinion 74 did not remain in the finished product, which was refined copper. The opinion acknowledged that because the iron did not remain in the finished product, the facts presented a “borderline case.” 55-74 Op. Att’y Gen. 182 (1955). However, because the iron remained incorporated in the product while it was undergoing processing in Nevada, the Opinion concluded that the iron was excluded from tax as a sale-for-resale.
 
 See id.
 

 Nevada Cement also cites Lone Star Industries, Inc. v. State, Department of Revenue, 647 P.2d 1013 (Wash. 1982), for support. In
 
 Lone Star,
 
 the Washington Supreme Court specifically rejected the primary purpose test imposed by the Washington Department of Revenue. The court held that the purchase of iron grinding balls and firebrick, used in the manufacture of Portland Cement, was not subject to a retail sales tax or use tax.
 
 See id.
 
 at 1015. The court emphasized the fact that the iron grinding balls and firebrick actually “supply essential ingredients or components of the finished product.”
 
 Id.
 
 at 1016. Washington’s definition of “retail sale” or “sale at retail” means every sale of tangible personal property except “purchases for the purpose of consuming the property purchased in producing for sale a new article of tangible personal property.”
 
 [3]
 

 Id.
 
 at 1014-15. This definition clearly differs from NRS 372.080 because it does not require that the finished product be transported out of the state for use.
 

 While NRS 372.080 does not specifically preclude dual-purpose items from exemption, it does not specifically permit such items either. Under Opinion 74, it appears as though a dual-purpose item could be exempted. However, even if this court should apply a physical-ingredient test, which may allow for the exemption of dual-purpose items under NRS 372.080, we conclude that Nevada Cement has not shown that it qualifies for such an exemption. NRS 372.080 requires that the final product into which the property is incorporated be
 
 transported outside the state for use outside the state.
 
 In the present case, it is undisputed that some of the product is transported outside Nevada and some remains within the state. Accordingly, we hold that the district court erred by applying a physical-ingredient test under NRS 372.080 to the items purchased by Nevada Cement.
 

 
 *884
 
 The Commission argues that the primary purpose test is the proper test to apply to the instant case. The Nevada sales tax is imposed on the retail sale of tangible personal property to consumers.
 
 See
 
 NRS 372.105; NRS 374.110. A “retail sale” or “sale at retail” is defined as “a sale for any purpose other than resale in the regular course of business of tangible personal property.” NRS 372.050. Thus, the Commission argues that all sales for any purpose other than resale are subject to sales and use tax. Accordingly, if a dual-purpose item is purchased and one purpose is not resale, under the primary purpose test, the sales and use tax would apply. In order for a sale to qualify as a nontaxable sale for resale, the sole purpose of the purchase must be resale.
 

 In support of their argument, the Commission points to the position articulated by the Attorney General in Op. Nev. Att’y Gen. 252 (October 26, 1961) (“Opinion 252”). Opinion 252 examined several of the statutes included in Chapter 372 of the Nevada Revised Statutes to determine the liability of American Linen Supply Company for payment of the Nevada use tax with respect to purchases of linens made by it from its wholly owned subsidiary, the American Uniform Company. In considering the language of NRS 372.050, the opinion noted that
 

 the wording of NRS 372.050 makes the legislative purpose reasonably clear to exempt only property
 
 solely
 
 used for resale, because “any purpose” would include all purposes generally. The words “other than” narrow the exempted purpose down to the singular. It is, therefore, reasonable to conclude that using purchased material in linen supply services and subsequently selling such articles after such useage [sic] will not carry with it the singular exemption from the sales tax as created by the act.
 

 61-252 Op. Att’y Gen. 106 (1961) (citations omitted). The Commission argues that this is a clear interpretation of NRS 372.050 as a primary purpose test.
 

 The Commission also argues that the approach adopted by the California Supreme Court is persuasive in the present case. The California Supreme Court has determined that the primary purpose test is the proper method for determining whether a sale is taxable as a retail sale or exempt as a sale for resale under a statute nearly identical to NRS 372.050.
 
 [4]
 

 See
 
 Kaiser Steel Corp. v. State Bd. of Equal., 593 P.2d 864 (Cal. 1979). The
 
 Kaiser
 
 court held that the primary purpose test was proper to determine the exemption of sales of property for the “purpose of physically
 
 *885
 
 incorporating it into the manufactured article to be sold.”
 
 See id.
 
 at 866.
 

 We conclude that the primary purpose test is the appropriate standard to apply under NRS 372.050. We find persuasive both Opinion 252 and the interpretation of the California Supreme Court in
 
 Kaiser.
 
 Additionally, the plain language of NRS 372.050 clearly suggests a primary purpose test. NRS 372.050 states that a retail sale is a sale “/or
 
 any purpose other than resale
 
 in the regular course of business” (emphasis added). We conclude that this language is properly interpreted to exempt from taxation only those items purchased for the express purpose of resale. In the present case, it is undisputed that Nevada Cement purchased the machinery parts both for use in the manufacture of Portland Cement and for the contribution of ingredients to the raw mix. This is clearly a dual purpose, and under a primary purpose test the items would be subject to taxation. Accordingly, we hold that the district court erred by applying a physical-ingredient test.
 
 [5]
 

 Finally, Nevada Cement argues that the Department has historically followed a physical-ingredient rule. At the administrative hearing, the Department’s counsel conceded that the steel grinding balls, steel kiln chain, kiln brick and castable materials were incorporated into the finished product and should be exempt from the sales and use tax. Nevada Cement now argues that this concession and Opinion 74 demonstrate that the Department has historically followed a physical-ingredient rule to distinguish a retail sale from a sale for resale.
 
 [6]
 

 We conclude that Nevada Cement has failed to show that the Department has historically followed a physical-ingredient test. The argument offered by the Department’s counsel was made when Nevada Cement was seeking exclusion of eleven different items, not just the four wholly incorporated into the finished product. Also, Opinion 74 examines a statute not at issue in the pre
 
 *886
 
 sent case. Accordingly, we conclude that this does not show a historical pattern or use of the physical-ingredient test.
 

 CONCLUSION
 

 Based on the foregoing analysis, we conclude that the primary purpose test is the proper test to analyze proposed exemptions under NRS 372.050. We further conclude that the district court erred in applying the physical-ingredient test in the instant matter. Accordingly, we reverse the order of the district court holding that Nevada Cement is entitled to a refund and remand this matter to the district court for further proceedings.
 

 [1]
 

 See
 
 State v. Southern Kraft Corporation, 8 So. 2d 886 (Ala. 1942); Blackmon v. Atlantic Steel Company, 203 S.E.2d 710 (Ga. Ct. App. 1973); Nucor Steel, Etc. v. Herrington, 322 N.W.2d 647 (Neb. 1982); Matter of Finch, Pruyn & Co., Inc. v. Tully, 419 N.Y.S.2d 232 (N.Y. App. Div. 1979); Bullock v. Lone Star Industries, Inc., 584 S.W.2d 386 (Tex. Ct. App. 1979); Lone Star Industries v. State, Dept. of Rev., 647 P.2d 1013 (Wash. 1982).
 

 [2]
 

 See
 
 Hervey v. International Paper Co., 483 S.W.2d 199 (Ark. 1972); Kaiser Steel Corp. v. State Bd. of Equal., 593 P.2d 864 (Cal. 1979); Gold Star Sausage Co. v. Kempf, 679 P.2d 1116 (Colo. Ct. App. 1984); Brennan Cattle Company v. Jones, 242 N.E.2d 192 (Ill. 1968); Merchants Cold Storage Co. v. Glander, 83 N.E.2d 197 (Ohio 1948); Quaker Oats Co. v. Jackson, 745 S.W.2d 269 (Tenn. 1988); Kingsport Pub. Corp. v. Olsen, 667 S.W.2d 745 (Tenn. 1984).
 

 [3]
 

 NRS 372.050 defines “retail sale” or “sale at retail” as a sale “for any purpose other than resale in the regular course of business.”
 

 [4]
 

 California Revenue and Taxation Code section 6007 defines a retail sale as “a sale for any purpose other than resale in the regular course of business in the form of tangible personal property.”
 

 [5]
 

 The Commission also argues that the items at issue in the instant case are subject to the sales and use tax pursuant to the current tax regulation pertaining to the tax treatment of manufacturers.
 
 See
 
 NAC 372.370. However, in light of our previous conclusion that the items at issue are subject to the sales and use tax under NRS 372.050, we need not consider this issue.
 

 [6]
 

 Nevada Cement also argues that the Commission is engaging in rulemaking in violation of the Nevada Administrative Procedures Act, which requires notice and public hearing for all proposed regulations or amendments to existing regulations.
 
 See
 
 NRS 233B.060. However, we conclude that the Commission is not promulgating regulations because the statute is being interpreted on its face and applied in a specific context.
 
 See
 
 K-Mart Corporation v. SIIS, 101 Nev. 12, 16, 693 P.2d 562, 565 (1985).