IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MATSON NAVIGATON CO., INC.,<br><br>Appellant,<br><br>v.<br><br>STATE OF WASHINGTON, DEP'T OF REVENUE,<br><br>Respondent. | No. 85215-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Matson Navigation Company appeals the denial by the Department of Revenue (Department) of retail sales tax refunds. Under RCW 82.08.0262(1)(d), certain services including cleaning and repairing tangible personal property are exempt from retail sales tax if such services are rendered to property that is a component part of carrier property engaged in interstate commerce, such as a container ship or a trailer hauled by a semitruck. Because the services for which Matson paid retail sales tax were rendered to shipping containers that were not component parts of ships and to electrical motor generators that were not component parts of trailers, the Board of Tax Appeals properly denied Matson's refund requests. We affirm.

FACTS

Matson is a shipping and transportation company that operates out of the ports of Seattle and Tacoma. During the time periods relevant here, Matson hired SSA Terminals, LLC (SSA) to inspect, clean, provide an estimate, and, if

approved, repair its shipping containers and electrical motor generators "coming through" the two ports. SSA included Washington State's retail sales tax when it invoiced Matson for these services.

According to facts stipulated by Matson and the Department, shipping containers are large metal boxes designed for intermodal transportation, "meaning they can be used interchangeably on ocean-faring container ships, railroad cars, and the chassis trailer of" semitrucks. Shipping containers are attached to ships and trailers using sockets that are permanently mounted to the ship or trailer. While the sockets are permanently mounted, "[t]he attachment of the containers to the ships and trailers is not permanent."

Some of the shipping containers at issue here have built-in refrigeration units. Onboard a container ship, such refrigerated shipping containers draw power from the ship's own internal power system, i.e., they are "plugged in" to the ship. When a refrigerated shipping container is hauled on a semitruck trailer over a highway, there is no source of electrical power as there is on a container ship. Consequently, the container's refrigeration equipment is powered by a motor generating electrical power "mounted" underneath the trailer chassis. Such motors generating electrical power "are not permanently attached to the trailer chassis," but are removed during transport only if necessary to perform repairs. Such motors are mounted to the trailer chassis only "when refrigerated containers are loaded onto trailers."

Matson filed two separate refund requests for the retail sales tax it paid for "various services related to cargo containers and motor generators which Matson

2

uses exclusively in conducting interstate commerce." The first claim, for the period January 1, 2011 through December 31, 2014, was for $378,197, plus interest. The second claim, for the period January 1, 2015 through December 31, 2017, was for $439,470, plus interest. The portion of the refund claims relating to servicing the shipping containers was $780,447. The portion of the claims relating to servicing the motor generators was $38,077.

The Department denied Matson's requests for refunds, and Matson appealed. The Department's Administrative Review and Hearings Division granted in part and denied in part Matson's requests. Matson then appealed to the Board of Tax Appeals, and the Board consolidated the two determinations.

On cross motions for summary judgment supported by stipulated facts, the Board granted the Department's motion and denied Matson's. The Board found that shipping "containers are not 'attached to and a part of' [container] ships." The Board also found that

> 11. The cargo containers are integral to the usefulness of the cargo ships for profitable transportation services, but they are not 'attached to and . . . a part of' the ship. That is, the containers do not impact the operation, seaworthiness, or other essential purpose.

The Board concluded that while neither the retail sales tax exemption statute, RCW 82.08.0262, nor the related administrative rule, WAC 458-20-175, require "permanent" attachment, a component part must be "attached to and part of" carrier property, such as a container ship.

As to motor generators, the Board found they "are not permanently attached to the trailer chassis." The Board also found that

15. The motor generators are integral to the safe transport of perishable items on the trailers, but are not 'attached to and becomes an integral part of the motor vehicle or trailer.' That is, they are not integral to the motor vehicle or trailer's operation or roadworthiness.

The Board concluded that "motor generators are not 'component parts' of the trailers because they are not an integral part of the motor carrier or the trailer."

Matson petitioned the Board for review of its initial decision. On review, the Board found its initial decision "rest[ed] on supported facts, the correct legal standard, and a reasonable application of the law to the facts." It denied Matson's petition and adopted its initial decision as its final decision.

Matson then petitioned for judicial review in King County Superior Court. The court affirmed the Board and ruled that the Board "did not err in its conclusion that cargo containers and refrigeration generators are not 'component parts' of watercraft or motor vehicles or trailers within the meaning of RCW 82.08.0262 and WAC 458-20-174 and 175." Matson timely appeals.

DISCUSSION

On appeal, Matson claims the Board erred by adding "extra-statutory requirements" when it denied Matson's requests for refunds of retail sales taxes Matson paid on cleaning and repair services for shipping containers and electrical motor generators.

When reviewing a superior court's order on judicial review of a Board of Tax Appeals final decision, we apply the standards of the Administrative Procedure Act (APA)[1] directly to the record before the agency and sit in the same

---

[1] Chapter 34.05 RCW.

4

position as the superior court. Dep't of Revenue v. Bi-Mor, Inc., 171 Wn. App. 197, 201-02, 286 P.3d 417 (2012), review denied, 177 Wn.2d 1002 (2013). We review the Board's legal determinations using the APA's "error of law" standard, which allows us to substitute our view of the law for that of the Board. Bi-Mor, 171 Wn. App. at 202 (citing RCW 34.05.570(3)(d)). Under the APA, "[t]he burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). When the original administrative decision was on summary judgment, we overlay the APA "error of law" standard of review with the summary judgment standard and review an agency's interpretation or application of the law de novo, while viewing the facts in the light most favorable to the nonmoving party. Bi-Mor, 171 Wn. App. at 202 (citing Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 916, 194 P.3d 255 (2008)).

Where a statute or rule's meaning is plain and unambiguous on its face, then we give effect to that plain meaning. Bi-Mor, 171 Wn. App. at 202-03 (citing Overlake Hosp. Ass'n v. Dep't of Health, 170 Wn.2d 43, 52, 239 P.3d 1095 (2010)). Statutes are " 'not ambiguous simply because different interpretations are conceivable.' " Bi-Mor, 171 Wn. App. at 203 (quoting Densley v. Dep't of Ret. Sys., 162 Wn.2d 210, 221, 173 P.3d 885 (2007)).[2] We read a regulatory term within the context of the regulatory and statutory scheme as a whole, not in isolation. Bi-Mor, 171 Wn. App. at 203 (citing Overlake Hosp., 170 Wn.2d at 52).

---

[2] Matson does not challenge any of the Board's findings of fact, which are therefore verities on appeal. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Matson also does not argue that the exemption statute, RCW 82.08.0262, is ambiguous or challenge the validity of the Department's rules interpreting the exemption statute for shipping containers, WAC 458-20-175, or motor generators, WAC 458-20-174.

"We should not construe a regulation in a manner that is strained or leads to absurd results. Our paramount concern is to ensure that the regulation is interpreted in a manner that is consistent with the underlying policy of the statute." Overlake Hosp., 170 Wn.2d at 52.

Washington State taxes retail sales. RCW 82.08.020. A retail sale includes "labor and services rendered in respect to . . . installing, repairing, cleaning, altering, imprinting, or improving of tangible personal property." RCW 82.04.050(2)(a). However, certain sales involving interstate commerce are exempt from the tax. First, sales of "carrier property" itself used in interstate commerce—such as airplanes, locomotives, railroad cars, watercraft, motor vehicles, and trailers—are exempt from the State's retail sales tax. RCW 82.08.0262(1)(a) (exemption for airplanes) & (b) (exemption for locomotives, railroad cars, and watercraft); RCW 82.08.0263 (exemption for motor vehicles and trailers). Second, under subsection (c), also exempt from the retail sales tax are "[s]ales of tangible personal property that becomes a component part of such airplanes, locomotives, railroad cars, or watercraft, and of motor vehicles or trailers . . . , in the course of constructing, repairing, cleaning, altering, or improving the same." RCW 82.08.0262(1)(c).[3] Third, subsection (d) provides that "[s]ales of or charges made for labor and services rendered in respect to such

---

[3] Separately, sales of other tangible personal property, other than component parts, to a carrier for use in interstate commerce are also exempt, unless such property is actually put to use in the State. RCW 82.08.0261(1). For example, a Department advisory regarding refrigerated shipping containers states that "retail sales tax does not apply to" their purchase by a carrier "under RCW 82.08.0261." This structure is intuitively sensible because state taxation of interstate commerce must " 'not create any effect forbidden by the Commerce Clause.' " S. Dakota v. Wayfair, Inc., 585 U.S. 162, 174, 138 S. Ct. 2080, 201 L. Ed. 2d 403 (2018) (quoting Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 285, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977)).

constructing, repairing, cleaning, altering, or improving" "such" component parts are also exempt. RCW 82.08.0262(1)(d).

Here, the parties stipulate that Matson seeks an exemption under RCW 82.08.0262(1)(d) for " 'repair and cleaning services performed on the cargo containers and motor generators,' not the sale of [other] tangible personal property." Reply Brief of Appellant 16 (quoting stipulated fact 13). Thus, the only issues before us are whether the exemption under RCW 82.08.0262(1)(d) applies to the services rendered to cargo shipping containers and electrical motor generators, which in turn requires determining whether the containers and generators are component parts of carrier property.

I.      Taxes on services rendered to cargo shipping containers

The Board used the word "seaworthiness" in its finding of fact number 11: "The cargo containers are integral to the usefulness of the cargo ships for profitable transportation services, but they are not 'attached to and . . . a part of' the ship. That is, the containers do not impact the operation, seaworthiness, or other essential purpose." Matson argues that the Board erred by adding "extra-statutory" language regarding "seaworthiness" to the exemption statute as it pertains to shipping containers.

In support, Matson cites two cases in which the court rejected the addition of language not in the respective part of the statute. In Agrilink Foods, Inc., v. Dep't of Revenue, the court held that RCW 82.04.260(4), which provided a lower business and occupation tax rate for persons engaging in the business of "processing perishable meat," could not be plainly read to include a requirement

7

that the end product, canned chili con carne, also be perishable. 153 Wn.2d 392, 399, 103 P.3d 1226 (2005).

In Lone Star Indus., Inc., v. Dep't of Revenue, the Department denied a cement manufacturer's request for a refund of retail sales taxes paid for iron grinding balls and silica firebricks based on its rule that imposed a "primary purpose" test. 97 Wn.2d 630, 631-32, 647 P.2d 1013 (1982). As both the grinding balls and firebricks wore out during the manufacturing process, their iron and silica became ingredients in the finished cement. Id. at 632. The court reversed the Department because the relevant exemption statute "does not require that the tangible personal property so purchased be acquired primarily for the purpose of such consumption in order to avoid taxation as a 'retail sale.' " Id. at 634 (quoting RCW 82.04.050). The court held the Department's rule that imposed a primary purpose test was invalid as it "clearly exceed[ed] the bounds" of the exemption statute. Id. at 636.

Here, Matson does not challenge the Board's finding of fact in which the word "seaworthiness" appears. And the word "seaworthiness" does not appear in the Board's conclusions. Rather, the Board's conclusion of law states only that a component part must be "attached to and a part of" a container ship, even if not permanently. Unlike the Department's statutory interpretations in Agrilink and Lone Star, though here the Board added an unnecessary word to the relevant finding of fact, its conclusion that shipping containers were not "attached to and part of" a container ship did not include the extra word "seaworthiness." Because

the conclusion does not rest on language added to the statutory exemption, the Board did not err in reaching it on that basis.

Second, Matson argues that the Board erroneously applied the relevant rule because, even if seaworthiness is required, its shipping containers are "attached to the watercraft to perform a function with respect to the transport of cargo," permanent attachment is not required, and the cargo in its shipping containers is moving in interstate commerce, so "[t]herefore, the containers qualify for the exemption." We disagree.

WAC 458-20-175 implements RCW 82.08.0262 and .0261 as they relate to watercraft such as a container ship. The rule states that "carrier property" means a container ship "and component parts of the same." It states that "component parts" "includes all tangible personal property which is attached to and a part of carrier property." The rule distinguishes property that is not attached, stating that the term "component parts"

> does not include furnishings of any kind *which are not attached to the carrier property* nor does it include consumable supplies. For example, it does not include, among other things, bedding, linen, table and kitchen ware, tables, chairs, ice for icing perishables or refrigerator cars or cooling systems, fuel or lubricants.

WAC 458-20-175 (emphasis added). Specific to retail sales taxes, the regulation continues:

> Except as to sales of or charges made for labor or services rendered with respect to the constructing, repairing, cleaning, altering or improving of carrier property, the foregoing exemptions are limited to sales of tangible personal property.
>
> Hence the retail sales tax applies upon the sales of or charges made for labor or services rendered in respect to . . . the installing,

9

> repairing, cleaning, altering, imprinting or improving of any other type of tangible personal property . . . .
>
> Thus the retail sales tax applies upon the charge made for repairing within this state of such things as switches, frogs,[4] office equipment, or any other property which is not carrier property.

WAC 458-20-175 (paragraph breaks added).

The regulation's first sentence refers to the retail sales tax exemption for "services rendered with respect to . . . carrier property," set out in RCW 82.08.0262(1)(d), which exempts, among other things, sales or charges for services rendered to tangible personal property that becomes a component part of carrier property. The same sentence of the regulation then discusses a limited exemption relating to tangible personal property. This exemption is based on RCW 82.08.0261, which exempts *sales of* tangible personal property that is not a component part of carrier property, but is "for use by the purchaser in connection with the business of operating" as a career in interstate commerce. The regulation's second sentence then explains that therefore, "retail sales tax applies" to—in other words, there is no exemption for— the sale of services "rendered in respect to . . . any other type of tangible personal property." Finally, the third sentence provides an example of the second sentence; the retail sales tax applies to the sale of services to repair other tangible personal property such as "switches, frogs, [and] office equipment" that is not carrier property, which includes components thereof.

---

[4] Frogs are part of a railroad, such as switches. <u>See, e.g.</u>, <u>Collier v. Great N. Ry. Co.</u>, 40 Wash. 639, 645, 82 P. 935 (1905).

Here, Matson argues shipping containers are attached to and part of its container ship because of four words in one of the Board's findings of fact, "attached to the ship," and because shipping containers "play an integral and necessary part in the operation of the containerships to carry cargo in interstate and foreign commerce." But the quoted finding in which the four words appear states in full:

> 5. The containers are designed to be stacked on top of one another for stowage. The *first level of containers is attached to the ships* using sockets that are permanently mounted to the vessels. Additional levels of containers are attached to the lower-level containers using permanent attachments on the containers.

Clerk's Papers at 35 (emphasis added). Moreover, Matson's argument ignores another Board finding that it does not challenge: "The ships are designed to carry cargo primarily in cargo containers, but *the containers are not 'attached to and part of' the ships*." Clerk's Papers at 35 (emphasis added).

The relevant question here is not whether shipping containers, in Matson's words, "play an integral and necessary part in the operation of containerships . . . in interstate . . . commerce."[5] The relevant question is whether the containers are tangible personal property that is a component part of Matson's container ship, attached to and part of its carrier property. Matson stipulated that shipping "containers are designed for intermodal transportation, meaning they can be used interchangeably on ocean-faring container ships, railroad cars, and the chassis trailer of highway tractors." Because the shipping containers are

---

[5] Nor does the Board disagree with Matson on this point. In finding of fact 11, the Board found: "The cargo containers are integral to the usefulness of the cargo ships for profitable transportation services . . . ."

"designed . . . [to] be used interchangeably" on container ships, railroad cars, and semitrucks, as intermodal cargo transportation demands, it cannot be true that they are attached only to container ships.

In addition, according to the record, "[a]ll of Matson's equipment goes through a process of cleaning and calibrating after we receive the equipment back from our customers." This suggests that shipping containers are cleaned and repaired after they are removed from a ship, hauled over land to a customer, and then returned to port empty. The record also indicates that SSA's services "[are] completed after each movement of freight and before the equipment leaves the terminal for the loading of a new shipment." In other words, at the time that SSA cleans and repairs Matson's shipping containers, they are not attached to any ship. Instead, the cargo has been delivered, and the containers are empty, in port, awaiting new cargo and assignment to another container ship or other carrier.

Viewing the record before the Board in the light most favorable to Matson, we conclude that Matson has not met its burden to show the Board erred as a matter of law when it concluded, relying on WAC 458-20-175, that the shipping containers that were being cleaned and repaired are attached to or a component part of its container ships. Accordingly, the Board did not err in concluding the retail sales tax exemption in RCW 82.08.0262(1)(d) for such services to tangible personal property that is a component part of a carrier does not apply.

12

II.     Taxes on services rendered to electrical motor generators

The parties stipulated that when a refrigerated container is hauled by a semitruck over a highway, a generator motor is temporarily "mounted" underneath the semitruck trailer to provide electrical power for the shipping container's refrigerator. The Board found such motor generators "are not permanently attached to the trailer chassis." The Board also found that "[t]he motor generators are integral to the safe transport of perishable items on the trailers, but are not 'attached to and [have not] become[] an integral part of the motor vehicle or trailer.' That is, they are not integral to the motor vehicle or trailer's operation or roadworthiness." The Board concluded that "motor generators are not 'component parts' of the trailers because they are not an integral part of the motor carrier or the trailer.

Matson claims the Board erred by adding a requirement to the exemption statute that a generator cannot be a component part attached to a trailer unless a generator impacts " 'roadworthiness.' " According to Matson, its electrical motor generators are attached even if "they may be removed" and they are integral because "[w]ithout the motor generators, refrigerated items cannot be carried in interstate or foreign commerce on the trailers." We disagree and conclude the electrical motor generators are not attached to and an integral part of a trailer, so the cleaning and repair services to them are not exempt from the retail sales tax.[6]

---

[6] The Department argues the Board did not err because no evidence in the record establishes that SSA repaired motor generators while repairing trailers. We need not address this argument because the Department did not make it before the Board. Also, the Board decided this matter on cross motions for summary judgment on stipulated facts; thus, the parties have conceded there was no genuine issue of material fact. See Pleasant v. Regence BlueShield, 181 Wn. App. 252, 261, 325 P.3d 237 (2014) ("By filing cross motions for summary judgment, the parties concede there were no material issues of fact.").

WAC 458-20-174 "explains the retail sales tax exemptions provided by RCW 82.08.0262 and 82.08.0263 for sales to for[-]hire motor carriers operating in interstate or foreign commerce." RCW 82.08.0263 exempts from the retail sales tax "sales of motor vehicles and trailers to be used" in interstate commerce. Further, as discussed above, RCW 82.08.0262 exempts sales of "tangible personal property that becomes a component part" of carrier property, such as a trailer. The rule further defines "component parts" as follows:

> (a) **Component parts** mean any tangible personal property that is attached to and becomes an integral part of the motor vehicle or trailer. It includes such items as *motors*, motor and body parts, batteries, paint, permanently affixed decals, and tires.
>
> (i) Component parts include the axle and wheels, referred to as a "converter gear" or "dolly," that is used to connect a trailer behind a tractor and trailer. Component parts also include tangible personal property that is attached to the vehicle and used as an integral part of the motor carrier's operation of the vehicle, even if the item is not required mechanically for the operation of the vehicle. It includes cellular telephones, communication equipment, fire extinguishers, and other such items, whether they are permanently attached to the vehicle or held by brackets that are permanently attached. *If held by brackets, the brackets must be permanently attached to the vehicle in a definite and secure manner with these items attached to the bracket when not in use and intended to remain with that vehicle.*
>
> (ii) Component parts do not include antifreeze, oil, grease, and other lubricants that are considered consumed at the time they are placed into the vehicle, even though they are required for operation of the vehicle. It does include items such as spark plugs, oil filters, air filters, hoses, and belts.

WAC 458-20-174(2) (emphasis added).[7]

---

[7] As an example of what is not attached to a trailer, while not binding, the Department points to its summary judgment motion before the Board, to which it attached a 1993 determination addressing whether tangible personal property such as pallets, tarps, and bungee cords that "were not custom cut to cover a specific vehicle" are exempt from retail sales taxes.

Matson argues that WAC 458-20-174 uses the word "motors," so its motor generators "are, by definition, 'component parts.' " However, the meaning of a word in a statute is not gleaned from the word alone but from " 'all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another.' " Burns v. City of Seattle, 161 Wn.2d 129, 146, 164 P.3d 475 (2007) (quoting State v. Huntzinger, 92 Wn.2d 128, 133, 594 P.2d 917 (1979) (internal quotation marks omitted)). Here, Matson stipulated to the fact that the electrical generator motors at issue are temporarily mounted underneath a trailer to power a refrigerated container's "refrigeration equipment." It is thus undisputed that the electrical generator motors at issue do not power the motor vehicles and trailers that are the subject of the regulation. WAC 458-20-174 ("Sales of motor vehicles, trailers, and parts to motor carriers operating in interstate or foreign commerce.").

Nevertheless, Matson argues that a component part need not be mechanically required to operate the vehicle. This is correct: the rule specifically states that tangible personal property is exempt if it is "intended to remain with that vehicle" and is securely attached by permanent brackets and provides several examples:

> Component parts also include tangible personal property that is attached to the vehicle and used as an integral part of the motor carrier's operation of the vehicle, even if the item is not required mechanically for the operation of the vehicle. It includes cellular telephones, communication equipment, fire extinguishers, and

---

Wash. Dep't of Revenue, Determination No. 92-111, 12 Wash. Tax Dec. 143 (1993). There, the Board concluded such property was not exempt because it was not permanently attached to and an integral part of those trailers.

> other such items, whether they are permanently attached to the vehicle or held by brackets that are permanently attached. If held by brackets, the brackets must be permanently attached to the vehicle in a definite and secure manner with these items attached to the bracket when not in use and intended to remain with that vehicle.

WAC 458-20-174(2)(a)(i).

Matson argues that it is the brackets, not the tangible personal property, i.e. the electrical generator motors, that must be intended to remain with the vehicle. But the rule states that it is "these items," i.e., the tangible personal property, that must be "attached to the bracket when not in use and intended to remain."

For example, the Department determined in a 2000 case that "[t]ire chains are also exempt when they are stored in boxes permanently attached to the vehicles." Wash. Dep't of Revenue, Determination No. 99-330, 19 Wash. Tax Dec. 519 (2000). In that case, the Board expressly found the interstate carrier "purchased tire chains for its trucks, and welded boxes on the trucks specifically for storage of the tire chains." The Board reasoned that tire chains are like the rule's example of fire extinguishers: not mechanically necessary to the operation of the vehicle but intended nonetheless to remain with that particular vehicle and stored, when not in use, in boxes permanently attached to the vehicle. Matson argues that the brackets on its trailers are permanently attached, like the boxes welded to the trucks in the 2000 determination, so, like the exempt tire chains stored in those boxes, its motor generators must also be exempt. Matson confuses the means, i.e., the brackets, for the ends, i.e., the status of being "attached" even when not in use. Tire chains are like the regulation's fire

16

extinguishers because they are permanently attached to a truck: even when not in use, they are stored in the boxes. In contrast, Matson's motor generators are not stored with the trailer when not in use: Matson stipulated that motor generators are mounted to a trailer only when "refrigerated containers are loaded onto trailers."

Finally, Matson argues its motor generators are "integral" to trailers because "[w]ithout the motor generators, refrigerated items cannot be carried in interstate or foreign commerce on the trailers." But the relevant question is whether the generators are integral to the trailer, not to interstate commerce. WAC 458-20-174(2)(a)(i) (defining whether a component part "is attached to and becomes an integral part *of the motor vehicle or trailer."*) (emphasis added). Here, Matson stipulated that the purpose of the motor generators at issue is to power a container's "refrigeration equipment," not the trailer. Unlike both tire chains and fire extinguishers, which are integral to motor vehicles and "intended to remain with that vehicle," WAC 458-20-171(2)(a)(i), Matson's motor generators are, in contrast and as discussed, not intended to remain with a specific trailer. Matson stipulated to the fact that its motor generators are mounted under a trailer only when a trailer will haul a refrigerated shipping container. Therefore, the generators are not otherwise needed, or integral, to trailers.

Viewing the record before the Board in the light most favorable to Matson, we conclude that Matson has not met its burden to show that the Board erred as a matter of law by relying on WAC 458-20-174 and concluding that the retail sales tax exemption in RCW 82.08.0262(1)(d) for services does not apply to

17

Matson's electrical motor generators that are not intended to remain with any particular trailer.

      Affirmed.

*Chung, J.*

WE CONCUR:

*Bowman, J.*        *Mann, J.*