[No. 42050-3-II.   Division Two.   October 9, 2012.]

THE DEPARTMENT OF REVENUE, *Appellant*, v. BI-MOR, INC.,
ET AL., *Respondents*.

198

*Robert M. McKenna, Attorney General,* and *Rosann Fitzpatrick, Assistant,* for appellant.

*Peter P. Perron* (of *Law Office of Peter Perron PLLC*), for respondents.

¶1 JOHANSON, A.C.J. — We are asked to decide if the Department of Revenue properly assessed retail sales tax on the gross amount of a tax-included sale under former RCW 82.08.050 (2001).[1] We hold that the Department of Revenue (Department) is unambiguously prohibited from using gross receipts as the basis for calculating the retail sales tax owed from a tax-included sale. We agree with the superior court and affirm the Board of Tax Appeals' dismissal of the Department's additional sales tax assessment based on the statute's plain language.

## FACTS

¶2 Bi-Mor Inc., doing business as "Stupid Prices," and Furniture Outlet LLC (collectively Bi-Mor) are affiliated business entities operating several Washington retail stores. Administrative Record (AR) at 197-98. Bi-Mor's business model advertises that its prices include all applicable sales taxes or that it is absorbing the sales tax (i.e., "Always No Tax"). AR at 198, 281. For accounting purposes, Bi-Mor manually calculates the applicable sales taxes based on the tender paid by the buyer and remits that amount to the Department of Revenue (Department). To calculate the tax owed to the Department, Bi-Mor deducts an amount for tax from the gross sale (commonly called "backing out" the sales tax) rather than adding tax to the customer's tendered sale. AR at 679.

¶3 The Department audited Bi-Mor, examining sales invoices or receipts from January 2003 through March

---

[1] We cite to the 2001 version of the statute as it was effective during the 2003-2006 audit period. LAWS OF 2001, ch. 188, § 4. The statute was amended twice in 2003, but the amendments are not relevant to this case. LAWS OF 2003, ch. 76, § 3; LAWS OF 2003, ch. 168, § 203.

2006. The Department found that some of Bi-Mor's receipts failed to separate retail sales tax from the selling price. Therefore, the Department contends that under former RCW 82.08.050, Bi-Mor must pay taxes on the gross amount received from the customer. Because Bi-Mor had paid taxes based on the "backing-out" method, the Department found that Bi-Mor had underpaid taxes. The Department therefore assessed Bi-Mor additional taxes.

¶4 Bi-Mor appealed the tax assessment to the Department's appeals division, which affirmed. Next, Bi-Mor appealed the tax assessment to the Board of Tax Appeals (Board) and both parties moved for summary judgment. Bi-Mor did not contest that during the audit period, most of their customer receipts did not separately state the sales tax portion; rather, Bi-Mor argued that the plain language of former RCW 82.08.050 prevented the Department from assessing additional tax based on gross sales receipts. On summary judgment, the Board reversed the Department's appeals division and dismissed the tax assessment. The superior court affirmed the Board's dismissal order. The Department appeals.

## ANALYSIS

¶5 The Department argues that in a tax-included sale, a retailer cannot exclude the sales tax from its gross receipts unless the retailer separately states the applicable sales tax in the sales invoice. Bi-Mor responds that because former RCW 82.08.050's plain language prohibits the Department from considering the advertised price to be the selling price in an advertised "tax included" sale, the Department may not assess additional taxes despite Bi-Mor's failure to state the applicable sales tax separately in the sales invoice. Bi-Mor is correct.

### I. Standard of Review

¶6 "In reviewing a superior court's final order on review of a Board decision, [we apply] the standards of the

Administrative Procedure Act [(APA)[2]] directly to the record before the agency, sitting in the same position as the superior court." *Honesty in Envtl. Analysis & Legislation (HEAL) v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 96 Wn. App. 522, 526, 979 P.2d 864 (1999). We review the Board's legal determinations using the APA's "error of law" standard, which allows us to substitute our view of the law for that of the Board. *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008); *see* RCW 34.05-.570(3)(d). Where the original administrative decision was on summary judgment, we overlay the APA "error of law" standard of review with the summary judgment standard and review an agency's interpretation or application of the law de novo while viewing the facts in the light most favorable to the nonmoving party. *Verizon*, 164 Wn.2d at 916. We review an agency's interpretation or application of the law de novo. *HEAL*, 96 Wn. App. at 526.

¶7 If the statute is ambiguous, we give substantial weight to an agency's interpretation of the law within its expertise. *Dep't of Labor & Indus. v. Granger*, 159 Wn.2d 752, 764, 153 P.3d 839 (2007); *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 593, 90 P.3d 659 (2004). Because the Department is the agency designated by the legislature to adopt interpretive rules for Washington's tax laws, we give the Department's interpretation of ambiguous statutes great weight. RCW 82.01.060; RCW 82.32.300; *Port of Seattle*, 151 Wn.2d at 593. But "deference to an agency is inappropriate where the agency's interpretation conflicts with a statutory mandate." *Granger*, 159 Wn.2d at 764. " '[R]ules that are inconsistent with the statutes they implement are invalid.' " *Granger*, 159 Wn.2d at 764 (alteration in original) (quoting *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 715, 153 P.3d 846, *cert. denied*, 552 U.S. 1040 (2007)).

¶8 If a statute's meaning or a rule's meaning is plain and unambiguous on its face, then we give effect to

---

[2] Ch. 34.05 RCW.

that plain meaning. *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 52, 239 P.3d 1095 (2010). If a statute is ambiguous, we may resort to statutory construction, legislative history, and relevant case law in order to resolve the ambiguity. *Overlake Hosp.*, 170 Wn.2d at 52. Only ambiguous statutes require judicial construction; statutes are " 'not ambiguous simply because different interpretations are conceivable.' " *Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 221, 173 P.3d 885 (2007) (quoting *State v. Keller*, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001), *cert. denied*, 534 U.S. 1130 (2002)). We read a regulatory term within the context of the regulatory and statutory scheme as a whole, not in isolation. *Overlake Hosp.*, 170 Wn.2d at 52. We do not construe a regulation in a manner that is strained or leads to absurd results. *Overlake Hosp.*, 170 Wn.2d at 52. Our paramount concern is to ensure that we interpret the regulation in a manner that is consistent with the statute's underlying policy. *Overlake Hosp.*, 170 Wn.2d at 52.

## II. STATUTORY PROVISIONS

¶9 The Department argues that in order to give effect to legislative intent, we must read the relevant statute together with related statutes, including the statutory definition of "selling price." Br. of Appellant at 14-15. Bi-Mor responds that former RCW 82.08.050's plain language prohibits the Department from considering the advertised price to be the selling price in an advertised "tax-included" sale. Br. of Resp't at 6-7. Bi-Mor is correct.

### A. Former RCW 82.08.050

¶10 In Washington, the retail seller must collect retail sales tax from the buyer and remit it to the state. Former RCW 82.08.050. The "selling price" determines the amount

of sales tax due "on each retail sale." RCW 82.08.020(1).[3] Former RCW 82.08.010(1) (2003)[4] defines "selling price" as "the total amount of consideration." The same statute also clarifies that "selling price" does not include "any taxes legally imposed directly on the consumer that are separately stated on the invoice." Former RCW 82.08.010(1)(b).

¶11 If a retailer adheres to requirements on advertising, the retailer may advertise that the price includes the tax or that the seller is paying the tax. RCW 82.08.055. Former RCW 82.08.050 governs retail tax collection, including the retail tax on tax-included sales; it provides:

> The tax required by this chapter to be collected by the seller shall be stated separately from the selling price in any sales invoice or other instrument of sale. On all retail sales through vending machines, the tax need not be stated separately from the selling price or collected separately from the buyer. For purposes of determining the tax due from the buyer to the seller and from the seller to the department it shall be conclusively presumed that the selling price quoted in any price list, sales document, contract or other agreement between the parties does not include the tax imposed by this chapter, but if the seller advertises the price as including the tax or that the seller is paying the tax, the advertised price shall not be considered the selling price.

Former RCW 82.08.050. Based on this statute, the Department's interpretive rule stated:

> Even when prices are advertised as including the sales tax, the actual sales invoices, receipts, contracts, or billing documents must list the retail sales tax as a separate charge. Failure to comply with this requirement may result in the retail sales tax due and payable to the state being computed on the gross

---

[3] The legislature has amended this statute many times since 2000, however, we cite to the current statute's subsection (1) because it has not changed. LAWS OF 2000, 2d Spec. Sess., ch. 4, § 1; LAWS OF 2003, ch. 361, § 301, effective July 1, 2003; LAWS OF 2006, ch. 1, § 3; LAWS OF 2011, ch. 171, § 120.

[4] LAWS OF 2003, ch. 168, § 101.

amount charged even if it is claimed to already include all taxes due.

Former WAC 458-20-107 (1986).

¶12 As an initial matter, we conclude that former RCW 82.08.050's language is plain and unambiguous. Former RCW 82.08.050 governs two subject matters: (1) the separate statement of tax requirement and (2) the selling price determination.

¶13 The first and second sentences of former RCW 82-.08.050, as quoted above, pertain to the separate statement of tax requirement and contain a general rule and one exception. In the first sentence, the statute requires a separate statement of tax in the instrument of sale. In the second sentence, the statute expressly excludes the separate statement of tax for vending machines. The third sentence pertains to the selling price determination and also contains a general rule and one exception. The third sentence first states that the selling price is "conclusively presumed" to be the price quoted in any price list, sales document, contract, or other agreement between the parties. The third sentence then states one exception: "but if the seller advertises the price as including the tax or that the seller is paying the tax, the advertised price shall not be considered the selling price."

¶14 For a properly advertised tax-included sale, former RCW 82.08.050 mandates that the advertised price is not "conclusively presumed" to be the sale price. It also plainly states that the Department shall not consider the advertised price to be the selling price when the seller advertises that the price includes the tax. Former RCW 82.08.050. Because Bi-Mor advertised that the price included the tax, we conclude that former RCW 82.08.050's plain language prohibits the Department from assessing Bi-Mor additional sales tax based on the gross amount paid by the customer.

## B. Former WAC 458-20-107

¶15 Based on former RCW 82.08.050, the Department's interpretive rule stated:

> Even when prices are advertised as including the sales tax, the actual sales invoices, receipts, contracts, or billing documents must list the retail sales tax as a separate charge. Failure to comply with this requirement may result in the retail sales tax due and payable to the state being computed on the gross amount charged even if it is claimed to already include all taxes due.

Former WAC 458-20-107.

¶16 Former WAC 458-20-107 correctly interprets former RCW 82.08.050 when it states that tax-included sales must list the retail sales tax as a separate statement on receipts and other instruments of sale. But the rule also imposes a penalty for failing to comply with the separate statement requirement: "Failure to comply with this requirement may result in the retail sales tax due and payable to the state being computed on the gross amount charged even if it is claimed to already include all taxes due." Former WAC 458-20-107. This penalty portion of the rule conflicts with former RCW 82.08.050 in two ways. First, it links the "separate statement" subject matter with the "selling price" subject matter, when there is no link in the statute other than being codified in the same subsection. Second, it contradicts the statutory mandate that when determining the tax due from a properly advertised tax-included sale, "the advertised price shall not be considered the selling price." Former RCW 82.08.050. Rather than follow this mandate, former WAC 458-20-107 creates an exception for tax-included sales without the tax separately stated on the instrument of sale. This rule created more tax liability than the legislature authorized. Thus, this portion of the rule is ultra vires and void as a matter of law. *Props. Four, Inc. v. State*, 125 Wn. App. 108, 117, 105 P.3d 416, *review denied*, 155 Wn.2d 1003 (2005).

¶17 Notwithstanding the clear language of former RCW 82.08.050, the Department asks us to look to RCW 82.08-.020(1) to support its interpretive rule. The Department relies on RCW 82.08.020(1)'s language, which states that the "selling price" determines the sales tax due "on each retail sale." The Department also relies on former RCW 82.08-.010(1), which defines "selling price" as "the total amount of consideration" and does not include "any taxes legally imposed directly on the consumer that are separately stated on the invoice." Former RCW 82.08.010(1). Therefore, the Department concludes that former WAC 458-20-107 properly requires a seller to state the retail tax separately as a precondition for excluding that amount from its gross receipts as retail tax payment. But the plain language of former RCW 82.08.050 mandates that when the seller advertises that the price includes the tax, the Department may not consider the advertised price to be the selling price, thus we give effect to that plain meaning as the expression of what was intended. *Overlake Hosp.*, 170 Wn.2d at 52.

## ATTORNEY FEES

¶18 Bi-Mor argues that the Department's appeal is wholly frivolous and requests attorney fees under RCW 4.84.185. Although the Department does not prevail, the Department presents rational arguments; thus, we conclude that its appeal is not wholly frivolous. *Goldmark v. McKenna*, 172 Wn.2d 568, 582, 259 P.3d 1095 (2011). Therefore, we deny an award of attorney fees to Bi-Mor.

¶19 We affirm the Board and the superior court.

Van Deren, J., concurs.

¶20 Quinn-Brintnall, J. (dissenting) — I agree with the majority that "the Department of Revenue [(DOR)] is unambiguously prohibited from using gross receipts as the basis

for calculating the retail sales tax owed from a tax-included sale." Majority at 200. But Bi-Mor Inc. did not engage in tax-included sales. Instead, Bi-Mor offered to absorb and pay sales tax for its customers and then attempted to remit to DOR only a tax-included amount. Further, denying its customers potential federal income tax deductions, Bi-Mor failed to state sales tax separately on its receipts. Under Washington contract law and WAC 458-20-107, Bi-Mor's receipts are thus insufficient to overcome the statutory presumption that sales tax is not included. Because Bi-Mor did not state sales tax separately on its receipts, DOR was correct to assess sales tax on the gross amount Bi-Mor charged its customers. Accordingly, I dissent.

BI-MOR OFFERED TO PAY SALES TAX FOR ITS CUSTOMERS AND CANNOT THEN REDEFINE SALES AS TAX-INCLUDED IN ORDER TO REMIT LESS SALES TAX

¶21 Bi-Mor correctly identifies three types of retail sales in its brief: traditional, tax-included, and seller-absorption sales. In a traditional sale, the seller advertises price without including sales tax and then adds it at the point-of-sale. RCW 82.08.055 enables sellers to engage in two other types of sales. Sellers may "advertise the price as including the tax *or* that the seller is paying the tax." RCW 82.08.055 (emphasis added). When a seller advertises the price as including sales tax, and then "backs out" sales tax,[5] the sale is tax-included. When a seller instead pays sales

---

[5] When a seller backs out sales tax, it divides the purchase price by one plus the sales tax rate expressed as a decimal. *See, e.g.*, Wash. Dep't of Revenue, Excise Tax Advisory No. 3032.2009 (Feb. 2, 2009), *available at* http://dor.wa.gov/docs/rules/eta3000/3032.pdf (Taxation of Amounts Received Through Sales of Abandoned Vehicles). When hearing this case, the Board of Tax Appeals reasoned that "[h]aving made the policy decision to permit tax-included advertised prices (and [seller-absorption] prices), the legislature would want to assure that the sellers who complied with those strict requirements would not lose the benefit of making such sales by having to make the complex point-of-sale calculations that factor out the sales price." Administrative Record at 27 n.5. But these calculations require only one act of simple division. Further, sellers can typically complete these calculations prior to opening their doors for business.

tax for its customer, the sale is a seller-absorption sale.[6] In traditional and tax-included sales, the customer pays sales tax to the seller who then remits the sales tax paid to DOR. Former RCW 82.08.050 (2003).[7] But in seller-absorption sales, the seller not only remits but also assumes the customer's obligation to pay sales tax.

¶22 While RCW 82.08.055 allows sellers to "advertise the price as including the tax or that the seller is paying the tax," it also requires that sellers label both tax-included and seller-absorption sales as "tax included." Thus, sellers seeking to absorb sales tax for their customers must "advertise . . . that the seller is paying the tax" and simultaneously label all prices as "tax included." RCW 82.08.055. This is exactly what Bi-Mor did.

¶23 Bi-Mor's advertising referenced both tax-included and seller-absorption sales. On April 28, 2002, Bi-Mor advertised in the *South County Journal* that "ALL PRICES INCLUDE SALES TAX!!" and that there is "Always No Tax." Administrative Record (AR) at 141. On its web site, Bi-Mor advertised that "[t]hese prices include your sales tax" but also offered to pay sales tax, stating, "Who pays the taxes?? WE DO!" AR at 284-85. In these advertisements, Bi-Mor represented sales tax as included and offered to pay sales tax for its customers. But both cannot be true. The testimony of Bi-Mor's president, Shane Baisch, provides clarity. Baisch explained candidly that Bi-Mor adopted the slogan "Always No Tax" in order to compete more effectively with Wal-Mart: "We decided to offer to cut the usual price in half and further indicate that we would absorb the sales tax in that discount, by marketing and offering to the custom-

---

[6] BRUCE M. NELSON ET AL., SALES AND USE TAX ANSWER BOOK, at Q 17:2 (2009 ed.) ("Example 17-2. Jones Motor Co., a used-car dealership, runs a two-week advertising campaign saying that 'if you buy the car, we pay the tax.' Susan purchases a car for $10,000 plus 5 percent sales tax. Jones charges her the $10,000 and absorbs the $500 tax. This is illegal in states prohibiting absorption, and Susan can still be assessed the $500 tax by the state.").

[7] In accord with the majority opinion, I cite to the 2003 version of the statute, the version in effect at the time the alleged tax violations occurred.

ers our trademarked 'Always No Tax.' " AR at 680. While Bi-Mor labeled its prices as "tax included," it also advertised that it would pay sales tax under the slogan of "Always No Tax." Given the content of Bi-Mor's advertising and the testimony of its president, Bi-Mor clearly advertised that it would pay customers' sales tax in seller-absorption sales.

¶24 Bi-Mor cannot offer to absorb sales tax and, instead, after the transaction is complete, back out sales tax. This accounting alchemy impermissibly transforms a seller-absorption sale into a tax-included sale at Bi-Mor's convenience. Consider a $1,000 sale with 9.5 percent sales tax. In a seller-absorption sale, the customer would pay $1,000 but not the $95 of sales tax. The seller would both pay and remit to DOR the $95 in sales tax. In contrast, in a tax-included sale, the customer would still pay $1,000 but $86.76 of this amount would be sales tax.[8] Therefore, if the seller offered to pay sales tax and instead backed it out, it would unjustly reduce the sales tax liability by $8.24—taking the difference for itself. This is exactly the unfair practice which Bi-Mor defends in this appeal.

¶25 To prevent this unfair practice, ch. 82.08 RCW requires that sellers disclose whether a sale is seller-absorption or tax-included by stating sales tax separately on receipts. Bi-Mor did not comply with this requirement.

BI-MOR FAILED TO STATE SALES TAX SEPARATELY, THUS DENYING ITS CUSTOMERS POTENTIAL FEDERAL INCOME TAX DEDUCTIONS

¶26 Ch. 82.08 RCW expressly requires sellers to state sales tax separately on receipts, invoices, and similar documents. Former RCW 82.08.050(3) begins, "The tax required by this chapter to be collected by the seller shall be stated separately from the selling price in any sales invoice or other instrument of sale." And former RCW 82.08.010(1) states that " '[s]elling price' or 'sales price' does not include . . . any taxes legally imposed directly on the con-

---

[8] $1,000.00/1.095 = $913.24 selling price, and $86.76 sales tax.

sumer *that are separately* stated on the invoice, bill of sale, or similar document given to the purchaser." (Emphasis added.) By stating sales tax separately, sellers disclose to customers and DOR whether "tax-included" refers to seller-absorption or tax-included sales.

¶27 Bi-Mor did not state sales tax separately. The administrative record includes hundreds of pages of sales receipts, almost none of which list sales tax. And where Bi-Mor did state the sales tax separately, the amount stated was often incoherent. For example, an October 2, 2005 receipt from Bi-Mor's Federal Way location states a subtotal of $17.45 and sales tax of $4.62. In a seller-absorption sale, $4.62 implies a sales tax rate of 26.476 percent.[9] In a tax-included sale, $4.62 implies a sales tax rate of 36.009 percent.[10] Neither makes sense when Federal Way's sales tax rate for the fourth quarter of 2005 was 8.8 percent. WASH. STATE DEP'T OF REVENUE, LOCAL SALES & USE TAX RATES & CHANGES, *available at* http://dor.wa.gov/docs/forms/excstx/locsalusetx/localslsuseflyer_06_q1.pdf (Oct. 24, 2005).

¶28 Other receipts are similarly incomprehensible. For example, a December 23, 2005 receipt from Bi-Mor's Kenmore location for a sale of $9,502.52 lists "TAX4 ST $18630.95," "GRS TAX4 $1547.92," "RFD TAX4 -40.14," and "TTL TAX $1507.78"—none of which reconcile. AR at 360. Again, total sales tax of $1,507.78 on a $9,502.52 sale makes no sense when Kenmore's sales tax rate was 8.8 percent. By not stating sales tax separately, or simply stating the wrong amount, Bi-Mor failed to inform customers whether sales were seller-absorption or tax-included. Bi-Mor's failure was misleading and has denied its customers potential federal income tax deductions.

¶29 Washingtonians may deduct sales tax paid to reduce their federal income tax liability under 26 U.S.C.

---

[9] $17.45(x) = $4.62. Thus, $x = $4.62/$17.45 = 0.26476$, or 26.476 percent. Percentages are rounded to the nearest thousandth.

[10] $12.83 + $4.62 = $17.45. Therefore, $12.83(x) = $4.62. $x = $4.62/$12.83 = 0.36009$, or 36.009 percent.

§ 164(b)(5).[11] Under § 164(b)(5), individuals may deduct the Internal Revenue Service's (IRS) estimate of sales tax paid or, "[i]f you saved your receipts throughout the year, you can add up the total amount of sales taxes you actually paid and claim that amount." *Sales Tax Deduction Calculator*, INTERNAL REVENUE SERVICE, http://www.irs.gov/Individuals/Sales-Tax-Deduction-Calculator (last visited Aug. 20, 2012). "This exemption saves a typical family in Washington State about $600 a year in taxes" and "[a]ccording to the latest IRS data, which is from 2009, nearly 850,000 Washingtonians took advantage of the deduction and reduced their taxable income by over $1.8 billion. This kept $500 million in Washington state." Editorial Board, *Sales-tax deduction must be permanent*, UNION-BULLETIN (Aug. 8, 2012), http://union-bulletin-.com/news/2012/aug/07/sales-tax-deduction-must-be-permanent/; *see also* Editorial, *Congress Should Make State Sales-Tax Deduction Permanent*, SEATTLE TIMES (Aug. 5, 2012, 4:00 PM), http://seattletimes.nwsource.com/html/editorials/2018843887_edit06salestaxdeductible.html. But if sales tax is not stated separately, then customers cannot discharge their "duty to substantiate their deductions" and cannot deduct the amount of sales tax actually paid. *Clapp v. Comm'r*, 875 F.2d 1396, 1403 (9th Cir. 1989); *see also* Income Tax Reg., 26 C.F.R. § 1.6001-1(a). Thus, sellers who fail to state sales tax separately effectively deny their customers the full benefit of 26 U.S.C. § 164.

¶30 Even if intending to engage in only tax-included sales, Bi-Mor denied its customers, and Washington State,

---

[11] In order to deduct sales tax, taxpayers must itemize and then elect to deduct sales tax instead of state income tax. 26 U.S.C. §§ 63(d), 67(b)(2) (listing § 164 as a below-the-line "miscellaneous itemized deduction"). This sales tax deduction is often a contested issue in Congress and has not always been available. For example, "[t]he sales tax deduction, eliminated in 1986, was restored in 2004, and was extended again in a tax measure signed by President Obama on December 17, 2010." *Federal Sales Tax Deduction*, WASHINGTON STATE DEPARTMENT OF REVENUE, http://dor.wa.gov/content/findtaxesandrates/incometax/federaldeduction.aspx (last visited Aug. 20, 2012). But for most of 2003 to 2006, the period at issue in this appeal, this sales tax deduction was available to Bi-Mor's customers.

the full benefit of 26 U.S.C. § 164's sales tax deduction when it failed to state sales tax separately.

UNDER WASHINGTON CONTRACT LAW AND WAC 458-20-107, DOR CAN ASSESS SALES TAX ON THE FULL AMOUNT OF CONSIDERATION PAID WHEN SELLERS FAIL TO CLEARLY ADDRESS THE ISSUE OF SALES TAX

A. BI-MOR'S ADVERTISING IS INSUFFICIENT TO OVERCOME THE STATUTORY PRESUMPTION THAT PRICES DO NOT INCLUDE SALES TAX WHEN BI-MOR'S RECEIPTS DID NOT STATE SALES TAX SEPARATELY

¶31 When Washington contracts are silent on the issue of sales tax, the statutory presumption is that the listed price does not include sales tax. Former RCW 82.08.050; *see Urban Constr. Co. v. Seattle Urban League*, 12 Wn. App. 935, 936, 533 P.2d 392, *review denied*, 85 Wn.2d 1018 (1975). Receipts silent on the issue of sales tax are also statutorily presumed to not include sales tax. This court's reasoning in *Pomeroy v. Anderson*, 32 Wn. App. 781, 785, 649 P.2d 855 (1982), is unaffected by the legislature's later regulation of tax-included and seller-absorption advertising:

> There is no finding . . . that either party was deceptive or attempted to take advantage of or defraud the other. Instead, the court found that the parties had different assumptions about sales tax. In our view the statutory presumption was designed precisely for a situation such as this where neither party was at fault, the parties did not discuss sales tax and the contract did not clearly provide that the price included sales tax. Under the facts of this case, we hold that RCW 82.08.050 controls, and for purposes of determining the tax due from the buyer (Anderson) to the seller (Pomeroy), *the selling price quoted in the contract does not include sales tax.*

(Emphasis added.) Here, Bi-Mor discussed sales tax in its advertising, but that ambiguous advertising did not resolve the issue. Because RCW 82.08.055's labeling requirements also obfuscate whether a sale is seller-absorption or tax-included, the statutory and practical need for clarity falls upon the receipt. If the receipt does not address sales tax,

the statutory presumption is that the selling price does not include sales tax. Former RCW 82.08.050.

¶32 Because Bi-Mor failed to state sales tax separately on its receipts, it cannot overcome the statutory presumption that sales tax is not included in the price. Whereas advertising is merely an invitation to deal,[12] receipts, like contracts, memorialize the sale. Thus, independent of whether advertising is ambiguous, the receipt controls whether sales tax was or was not included.

¶33 Because Bi-Mor's receipts failed to clarify whether sales were traditional, tax-included, or seller-absorption, its sales are conclusively presumed to not include sales tax. Former RCW 82.08.050. Thus, DOR correctly assessed additional sales tax on Bi-Mor's gross receipts.

¶34 In response to this assessment, Bi-Mor asserts that "DOR's sole remedy is to proceed against the buyer." Br. of Resp't at 11 (emphasis omitted). This assertion is patently false and emphasizes the importance of clarifying at the point-of-sale which party is paying the sales tax. *See* former RCW 82.08.050(6) ("Where a buyer has failed to pay to the seller the tax imposed by this chapter and the seller has not paid the amount of the tax to the department, *the department may, in its discretion*, proceed directly against the buyer for collection of the tax." (emphasis added)). To prevent such shirking, RCW 82.08.055, .050, and .010 operate coextensively to require that sellers disclose whether a sale is traditional, tax-included, or seller-absorption by stating sales tax separately. Recognizing the fundamental differences between these sales, DOR stated, "[B]uyers have the right to know whether retail sales tax is being included in advertised prices or not and that the tax is not to be used for the competitive advantage or disadvantage of retail sellers."

---

[12] *Coyote Publ'g, Inc. v. Miller*, 598 F.3d 592, 604 (9th Cir. 2010) ("In contract terms, an advertisement is an invitation to deal and may operate as an offer, though in the typical case it does not bind the seller." (citing 1 JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 2.4, at 116 (1993))), *cert. denied*, 131 S. Ct. 1556 (2011).

WAC 458-20-107(3)(c). To ensure clarity and statutory interoperability, DOR issued regulation WAC 458-20-107.

B. WAC 458-20-107 IS A VALID REGULATION AND PRESERVES THE INTEROPERABILITY OF CH. 82.08 RCW

¶35 The majority is correct that "[i]f a statute's meaning or a rule's meaning is plain and unambiguous on its face, then we give effect to that plain meaning." Majority at 202-03 (citing *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 52, 239 P.3d 1095 (2010)). And read in isolation, former RCW 82.08.050(5)'s exception that "if the seller advertises the price as including the tax or that the seller is paying the tax, the advertised price shall not be considered the selling price" might seem unambiguous. But interpreted in the larger context of ch. 82.08 RCW, this exception has no plain meaning.

¶36 First, former RCW 82.08.050(5) is directly at odds with RCW 82.08.055. RCW 82.08.055 expressly allows seller-absorption sales with the phrase "[a] seller may advertise the price as including the tax or that the seller is paying the tax." Former RCW 82.08.050(5) then incorporates this phrase into its exception that "if the seller advertises the price as including the tax or that the seller is paying the tax, the advertised price shall not be considered the selling price." Seller-absorption sales would thus satisfy this conditional statement, resulting in the consequent of "the advertised price shall not be considered the selling price." Former RCW 82.08.050(5). But by definition, the advertised price equals the selling price in seller-absorption sales. Bi-Mor could argue that because Washington law proscribes the mechanics of seller-absorption sales, both "price as including the tax" and "the seller is paying the tax" must refer to tax-included sales. But beyond the wide consensus that seller-absorption sales are allowed in Wash-

ington,[13] it cannot be that the legislature sought to explicitly condone misleading advertising—that "seller[s] may advertise . . . that the seller is paying the tax," charge customers sales tax, and remit only a tax-included amount. RCW 82.08.055. Thus, ch. 82.08 RCW is ambiguous.

¶37 Second, with vending machines, the legislature expressly waived the requirement to state sales tax separately. "On all retail sales through vending machines, the tax need not be stated separately from the selling price or collected separately from the buyer." Former RCW 82.08-.050(5). Instead, sellers pay sales tax on 60 percent of gross receipts for vending machine sales. RCW 82.08.080. But the legislature has provided no similar exception, or alternative means of calculating sales tax liability, for either tax-included or seller-absorption sales. In this statutory silence, ch. 82.08 RCW's express requirement to state sales tax separately remains. Former RCW 82.08.050(5); former RCW 82.08.010(1).

¶38 Last, former RCW 82.08.050(5) does not address how its various parts—stating sales tax separately, its conclusive presumption that tax is not included, and its exception for tax-included sales—interoperate. While former RCW 82.08.050(5)'s language is unclear, the legislature's intent was not. When the legislature decriminalized tax-included and seller-absorption advertising, it clearly intended that RCW 82.08.055's limits on advertising operate in conjunction with former RCW 82.08.050(5) and former RCW 82.08.010(1)'s disclosure requirements. H.B.

---

[13] Br. of Appellant at 34 ("By suggesting that they would 'absorb the sales tax,' Bi-Mor and Furniture Outlet indicated to consumers that they would pay the tax itself. This was a permissible marketing strategy. *See* RCW 82.08.055."); Br. of Resp't at 6 ("The 1985 enactment of RCW 82.08.55 created two additional forms of sales tax treatment. It permitted the sales tax to be either (a) included in the advertised price (a 'tax-included' sale), or (b) paid only by the seller on the buyer's behalf, i.e., the buyer does not actually pay the sales tax (a 'seller absorption' sale)."); NELSON ET AL., *supra*, at Q 17:2 (2009 ed., CCH) (2008) ("Sellers may absorb the sales tax in seven states: . . . Washington."). Also, the Board of Tax Appeals noted that the legislature "made the policy decision to permit tax-included advertised prices (and seller tax-absorption prices)." AR at 27 n.5.

601, 49th Leg., Reg. Sess. (Wash. 1985). The summary for House Bill 601 states, "Retailers are allowed to advertise and display sales prices which include the sales tax or infer that they are absorbing the sales tax. However, the sales invoice or other instrument of sale must state the tax separately. Specific conditions are established for advertising the inclusion of the tax." 1985 FINAL LEGISLATIVE REPORT, 49th Wash. Leg., at 124. To supplement the statutory text in accordance with this legislative intent, DOR issued its interpretive rule, WAC 458-20-107.

¶39 Although WAC 458-20-107 does not address the permissibility of seller-absorption sales, it does resolve the interoperability of ch. 82.08 RCW in regard to tax-included sales. WAC 458-20-107 states,

(2) . . . RCW 82.08.050 specifically requires that the retail sales tax must be stated separately from the selling price on any sales invoice or other instrument of sale, i.e., contracts, sales slips, and/or customer billing receipts . . . . This is required even though the seller and buyer may know and agree that the price quoted is to include state and local taxes, including the retail sales tax.

(a) The law creates a 'conclusive presumption' that, for purposes of collecting the tax and remitting it to the state, the selling price quoted does not include the retail sales tax. This presumption is not overcome or rebutted by any written or oral agreement between seller and buyer.

(b) [However, s]elling prices may be advertised as including the tax or that the seller is paying the tax and, in such cases, the advertised price must not be considered to be the taxable selling price under certain prescribed conditions explained in this section. *Even when prices are advertised as including the sales tax, the actual sales invoices, receipts, contracts, or billing documents must list the retail sales tax as a separate charge. Failure to comply with this requirement may result in the retail sales tax due and payable to the state being computed on the gross amount charged even if it is claimed to already include all taxes due.*

(Emphasis added) (citing RCW 82.32.300 for "Statutory Authority").

¶40 Because ch. 82.08 RCW is ambiguous and silent on issues addressed by WAC 458-20-107, its validity depends on "whether the rule is reasonably consistent with the statute it purports to implement." *Weyerhaeuser Co. v. Dep't of Ecology*, 86 Wn.2d 310, 314, 545 P.2d 5 (1976). "[A]dministrative rules adopted pursuant to a legislative grant of authority are presumed to be valid and should be upheld on judicial review if they are reasonably consistent with the statute being implemented." *Fahn v. Cowlitz County*, 93 Wn.2d 368, 374, 610 P.2d 857, 621 P.2d 1293 (1980). Here, WAC 458-20-107 is "necessary to the effectuation of a general statutory scheme." *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975).

¶41 WAC 458-20-107 clarifies that former RCW 82.08-.050(5)'s requirement to state sales tax separately and RCW 82.08.055's limits on advertising operate coextensively. This court has already found that "[c]onsistent with the plain language of RCW 82.08.050, WAC 458-20--107(1)(c) explains that this statutory presumption of sales tax noninclusion in the list price is irrebuttable and not overcome by any oral or written agreement between the parties." *AARO Med. Supplies, Inc. v. Dep't of Revenue*, 132 Wn. App. 709, 722 n.10, 132 P.3d 1143 (2006), *review denied*, 159 Wn.2d 1013 (2007). WAC 458-20-107's other provisions, those emphasized above, are similarly consistent with former RCW 82.08.050. By expositing the consequences of failing to state sales tax separately, WAC 458-20-107 answers the questions of how former RCW 82.08.050(5) and RCW 82.08.055 interoperate. Because it is consistent with and appropriately supplements former RCW 82.08.050, WAC 458-20-107 is a valid regulation.

¶42 WAC 458-20-107, itself clear and unambiguous, must be given its plain meaning. *Overlake*, 170 Wn.2d at 52. To overcome the presumption that sales tax is not included in the price, sellers must (1) advertise tax as included and

(2) "the actual sales invoices, receipts, contracts, or billing documents must list the retail sales tax as a separate charge." WAC 458-20-107(2)(b). Bi-Mor has not complied with these requirements. Thus, independent of whether it may engage in seller-absorption sales, Bi-Mor is ineligible for tax-included treatment. Based on WAC 458-20-107(2), DOR was clearly authorized to assess additional sales tax "on the gross amount charged."

CONCLUSION

¶43 "[T]axes are one of the most sensitive points of contact between citizens and their government, and . . . there is a delicate balance between revenue collection and taxpayers' rights and responsibilities." RCW 82.32A.005(1). By requiring sellers to state sales tax separately, the legislature relies on them for the transparent imposition of sales tax. DOR similarly strives for transparency, through regulations, excise tax advisories, industry specific guides, and its exhaustive web site. But ultimately, taxpayers are themselves responsible for knowing their tax obligations "and when they are uncertain about their obligations [for] seek[ing] instructions from the department of revenue." RCW 82.32A.030(2). Bi-Mor failed to state sales tax separately as former RCW 82.08.050 requires. Congruent with Washington contract law, DOR made the consequences of Bi-Mor's failure absolutely clear in WAC 458-20-107. Because Bi-Mor failed to state sales tax separately, DOR correctly assessed additional sales tax on the purchase price appearing on Bi-Mor's sales receipts.

¶44 Accordingly, I dissent.

Reconsideration denied December 3, 2012.

Review denied at 177 Wn.2d 1002 (2013).