**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/WAreports/.

FILED
8/1/2022
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ECHO GLOBAL LOGISTICS, INC., | ) | No. 83548-3-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF REVENUE | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

HAZELRIGG, J. — Echo Global Logistics, Inc. appeals a determination by the Board of Tax Appeals, arguing it is subject to a public utility tax rather than a business & occupation tax. Because Echo fails to demonstrate the Board erroneously interpreted or applied the law, we affirm.

FACTS

Echo Global Logistics, Inc. (Echo) is a freight broker; it contracts with motor carriers and customers to facilitate and coordinate the transportation of goods nationally. In November 2014, the Department of Revenue (Department) performed a desk examination of Echo's business and occupation (B&O) tax returns and reclassified the freight broker under the "service and other" business classification for tax purposes. Echo appealed this determination to the Board of Tax Appeals (Board), arguing it was subject to the public utility tax (PUT), not a

No. 83548-3-I/2

B&O tax, despite the fact that it had been paying B&O tax for approximately four years at that point. The Department moved for summary judgment, which was granted. Echo then appealed to the Clark County Superior Court, which affirmed the Board's decision. Echo timely appealed.

ANALYSIS

I.      Standard of Review

This court reviews decisions by the Board under the Administrative Procedure Act (APA).[1] Steven Klein, Inc. v. Dep't of Revenue, 183 Wn.2d 889, 895, 357 P.3d 59 (2015) (citing RCW 82.03.180). "Under the APA, we may grant relief from an agency order when '[t]he agency has erroneously interpreted or applied the law.'" Id. (quoting RCW 34.05.570(3)(d)). We apply the APA "'directly to the record before the agency, sitting in the same position as the superior court.'" Dep't of Revenue v. Bi-Mor, Inc., 171 Wn. App. 197, 201–02, 286 P.3d 417 (2012) (quoting Honesty in Envtl. Analysis & Legis. (HEAL) v. Cent. Puget Sound Growth Mgmt. Hr'g Bd., 96 Wn. App. 522, 526, 979 P.2d 864 (1999)). If the Board dismissed an administrative appeal on summary judgment, "we overlay the APA 'error of law' standard of review with the summary judgment standard, and review an agency's interpretation or application of the law de novo while viewing the facts in the light most favorable to the nonmoving party." Bi-Mor, Inc., 171 Wn. App. at 202.

---

[1] Ch. 34.05 RCW.

No. 83548-3-I/3

II.     Definition of "Operates"

Echo first asserts it is a motor transportation business under RCW 82.16.010(6) because it "operate[s]" motor vehicles by "'exert[ing] power or influence' over a motor vehicle by contracting with a third party."  The Department responds Echo does not "operate" a motor vehicle because it merely "arrang[es] for transportation by a third party" rather than physically moving goods.

Statutory interpretation is a question of law reviewed de novo.  Puget Sound Energy v. Dep't of Revenue, 158 Wn. App. 616, 620, 248 P.3d 1043 (2010).  The court's "objective is to ascertain and carry out the legislature's intent."  Id.  "Generally, Washington's B & O tax applies to the act or privilege of engaging in business activities," unless those activities are "explicitly taxed elsewhere in the statutory scheme."  First Student, Inc. v. Dep't of Revenue, 194 Wn.2d 707, 711, 451 P.3d 1094 (2019) (citing RCW 84.04.220, .290(2)).  Businesses that are subject to the PUT are not subject to the B&O tax under RCW 82.04.310(1).  Id.  RCW 82.16.020(1)(f) lists businesses subject to the PUT, including "[m]otor transportation, railroad, railroad car, and tugboat businesses."  "Motor transportation business" is defined in RCW 82.16.010(6) as:

> [T]he business (except urban transportation business) of operating any motor propelled vehicle by which persons or property of others are conveyed for hire, and includes, but is not limited to, the operation of any motor propelled vehicle as an auto transportation company (except urban transportation business), common carrier, or contract carrier as defined by RCW 81.68.010 and 81.80.010.

RCW 81.80.010 in turn defines the terms "common carrier" and "contract carrier." A common carrier is "any person who undertakes to transport property for the general public by motor vehicle for compensation," and a contract carrier "includes

- 3 -

all motor vehicle operators not included under the terms 'common carrier' and 'private carrier,'" in addition to "any person who under special and individual contracts or agreements transports property by motor vehicle for compensation." RCW 81.80.010(1), (2). "[B]rokers and forwarders" are explicitly included as "common carriers" and "contract carriers." RCW 81.80.010(3).

While interpreting a statute, this court "'endeavor[s] to effectuate the legislature's intent by applying the statute's plain meaning, considering the relevant statutory text, its context, and the statutory scheme.'" Olympic Tug & Barge, Inc. v. Dep't of Revenue, 188 Wn. App. 949, 952, 355 P.3d 1199 (2015) (quoting Cashmere Valley Bank v. Dep't of Revenue, 181 Wn.2d 622, 631, 334 P.3d 1100 (2014)). In a plain meaning inquiry, the court "may resort to an applicable dictionary definition to determine the plain and ordinary meaning of a word that is not otherwise defined by the statute." First Student, Inc., 194 Wn.2d at 711. After investigating the plain meaning, if "the statute remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 12, 43 P.3d 4 (2002).

The word "operate" is not defined by the statute. Echo and the Department submitted differing dictionary definitions: Echo cites the 1976 version of Webster's Third New International Dictionary, while the Department cites the 2002 version. Echo's cited definition for operate is "to perform a work or labor : exert power or influence : produce an effect." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, UNABRIDGED, 1580 (1976). The Department's cited

definition is "to cause to function [usually] by direct personal effort: work [as in operate] a car." WEBSTER THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED, 1581 (2002).

"We employ traditional rules of grammar in discerning the plain language of the statute." Diaz v. North Star Tr., LLC, 16 Wn. App. 2d 341, 353, 481 P.3d 557 (2021). As the Department notes, "operating" is a transitive verb within the statute, with "motor transportation business" as the subject and "motor propelled vehicle" as the direct object. Echo's cited dictionary definition of "produce as effect" would alter the grammatical structure of the sentence by changing the direct object from "motor propelled vehicle" to "transportation" as the effect is the transportation of goods, rather than a motor propelled vehicle. Its other two definitions do not suffer from the same grammatical shortcoming, but also do not encompass the broad reading of "operate" that Echo asks this court to find. "[T]o perform a work or labor" or to "exert power or influence" both suggest a direct connection between the performance or exertion and the consequential result on the direct object: a motor propelled vehicle. Echo's "work or labor" or "power or influence" is the coordination and management of the movement of goods, not the impact on a motor propelled vehicle. Echo's actions are too attenuated from the physical movement of a motor propelled vehicle to reasonably fall within even its own proposed grammatically appropriate dictionary definition of "operate." Under the plain language of the statute, Echo is not a motor transportation business and the Board did not err in so holding.

No. 83548-3-I/6

III.     Public Service Business

Echo alternatively argues it falls within the scope of the PUT as a "'business subject to control by the state,'" or as one "'declared by the legislature to be of a public service nature.'" (Quoting RCW 82.16.010(7)(a)).

Under RCW 82.16.020(1)(f), the PUT applies to "all public service businesses other than the ones mentioned above." A public service business is defined as "any business subject to control by the state, or having the powers of eminent domain and the duties incident thereto, or any business hereafter declared by the legislature to be of a public service nature." RCW 82.16.010(7)(a). "It includes, among others, without limiting the scope hereof: Airplane transportation, boom, dock, ferry, pipe line, toll bridge, toll logging road, water transportation and wharf businesses." Id.

A.     Subject to State Control

Echo largely relies on article XII, section 13 of the Washington Constitution to argue it is subject to control by the state. This section governs the regulation of common carriers, holding "[a]ll railroad, canal and other transportation companies are declared to be common carriers and subject to legislative control." WASH. CONST. art. XII, § 13. The Board found freight brokers "are not subject to any meaningful control by the State, which is defined . . . as the control over rates charged for services rendered." Echo alleges this was error because the legislature could constitutionally exercise control over freight brokers. The Department contends that until the legislature exercises "actual 'control'" over freight broker rates or services, brokers are not subject to control by the state. It

- 6 -

avers that if this court held Echo is subject to state control based solely on some possible future exercise of the delegation authority of in the state constitution, there would be a "sea-change in the tax treatment of numerous businesses" because all businesses required to comply with state registration requirements would be deemed subject to state control.

In Continental Grain Company v. State, our Supreme Court found a warehouse was subject to state control because it (1) "annually applied for and received a public-grain-warehouse license," (2) filed "evidence of proper insurance, a financial statement and schedule[ ] of charges," (3) "furnish[ed] a warehouse bond," and (4) provided "warehouse receipts to its customers upon forms prescribed by the Department of Agriculture." 66 Wn.2d 194, 197, 401 P.2d 870 (1965). In Shurguard Mini-Storage of Tumwater v. Department of Revenue, Division II of this court analyzed whether a warehouse was subject to control, relying on "the rule of noscitur a scoiis,[2] which teaches that the meaning of doubtful words may be determined by reference to their relationship with other associated words and phrases." 40 Wn. App. 721, 727, 700 P.2d 1176 (1985). The court rooted its analysis in the last sentence of RCW 82.16.010(11), which gave examples of businesses regulated by the state, including those which "required licensing by the state and the filing of rates." Id. at 727–28.

Mirroring the language in the two cases set out above, WAC 458-20-179(b)(i) defines "subject to control by the state" as "control by the utilities and

---

[2] "'[A] word is known by the company it keeps.'" McDonnell v. United States, 579 U.S. 550, 569, 136 S. Ct. 2355, 195 L. Ed. 2d 639 (2016) (quoting Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307, 81 S. Ct. 1579, 6 L. Ed. 2d 859 (1961)).

- 7 -

No. 83548-3-I/8

transportation commission or any other state agency required by law to exercise control of a business of a public service nature <u>regarding rates charged or services rendered</u>."  (Emphasis added.)  As a common or contract carrier,[3] Echo is required to obtain a permit from the Washington State Utilities and Transportation Commission.  RCW 81.80.070(1).  In order to successfully obtain a permit, a carrier must "establish safety fitness and proof of minimum financial responsibility as provided in this chapter."  RCW 81.80.070(3).  Echo does not expand on what these requirements entail and it concedes it is not subject to rate regulation by law or by the Commission.  This is not sufficient under the definition set out in WAC 458-20-179.

The State's potential power to regulate freight brokers is also limited by federal preemption.  Under 49 USC § 14501(b)(1), "no State or political subdivision . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker."  The next section of this statute provides that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of . . . any motor private carrier, broker, or freight forwarder with respect to the transportation of property."  49 USC § 14501(c)(1).

Based on the definition in WAC 458-20-179 and under federal law, freight brokers are not subject to control by the state.

---

[3] "Common carrier" and "contract carrier" includes freight brokers. <u>See</u> RCW 81.80.010(3).

B.      Declared to Be of a Public Service Nature

Finally, Echo argues the legislature has declared that freight brokers are public service businesses.   Under RCW 82.16.010, a public service business includes "any business hereinafter declared by the legislature to be of a public service nature."

Echo relies on RCW 81.80.010 and .020 in support of this proposition. RCW 81.80.020 states "[t]he business of operating as a motor carrier of freight for compensation along the highways of this state is declared to be a business affected with a public interest."  RCW 81.80.010 defines "public service company" as "any person, firm, association, or corporation, whether public or private, operating a utility or public service enterprise subject in any respect to regulation by the utilities and transportation commission under the provisions of this title or Title 22 RCW."   The Department counters that RCW 81.80.020 applies only to businesses "operating as a motor carrier of freight," which excludes freight brokers because it does not transport freight.   The Department also correctly notes that neither statutory provision explicitly mentions freight brokers, but Echo contends that "motor carrier" includes common and contract carriers, which do explicitly include brokers.  See RCW 81.80.010(3).

RCW 81.80.020 states that "[t]he rapid increase of motor carrier freight traffic and the fact that under the existing law many motor trucks are not effectively regulated have increased the dangers and hazards on public highways and make it imperative that regulation to the fullest extent allowed . . . should be employed." The statute focuses on the proper development and preservation of public

- 9 -

highways and the stability of public transportation services for the public. This plain language contradicts Echo's argument that the statute captures freight brokers because brokers do not directly transport goods on public highways, nor does they provide a transportation service to the public; brokers like Echo provide coordination and facilitation services between customers and carriers who do operate motor transportation vehicles.

Additionally, the Department correctly notes that "a business affected with a public interest" and a "business . . . of a public nature" are different. "We presume the legislature intends a different meaning when it uses different terms." Foster v. Dep't of Ecology, 184 Wn.2d 465, 473, 362 P.3d 959 (2015). RCW 82.16.010(7)(a) defines a public service business as "any business hereafter declared by the legislature to be of a public service nature," while RCW 81.80.020 declares that "[t]he business of operating as a motor carrier of freight for compensation along the highways of this state is declared to be a business affected with a public interest." (Emphasis added.) In Merriam-Webster Online Dictionary, the definition of "nature" includes "disposition, temperament," "the inherent character or basic constitution . . . of a person or thing: essence" or "a kind or class usually distinguished by fundamental or essential characteristics." https://www.merriam-webster.com/dictionary/nature (last visited June 10, 2022). Merriam-Webster defines "affected" as "inclined, disposed." https://www.merriam-webster.com/dictionary/affected (last visited June 10, 2022). We presume that the legislature used these different terms to mean different things; "nature" implies a

- 10 -

fundamental characteristic distinguishing one category from another, while "affected" is a more ancillary characteristic or inclination.

The full declaration of policy in RCW 81.80.020 highlights this distinction: the statute discusses the importance of preserving public highways and the need for "stabilized service and rate structure" of motor carriers for the public. This supports a reading of "affected with a public interest" as implicating a community-wide concern, rather than distinguishing a business category from others. Under the plain language of the statute, there is not a clear statement from the legislature that freight brokers are "of a public service nature" and therefore Echo does not qualify for the PUT.

Affirmed.

WE CONCUR: