IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RHONDA L. DUNCAN d/b/a THE COMPASSIONATE KITCHEN, | ) ) ) | No. 33245-4-III |
| Respondent, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON DEPARTMENT OF REVENUE, | ) ) ) | |
| Appellant. | ) | |

SIDDOWAY, J. — At issue in this appeal is whether the retail sale in 2009 of

medical marijuana was exempt from retail sales tax as a prescribed drug. We agree with

the Department of Revenue and the Board of Tax Appeals that it was not. We reverse the

superior court's contrary decision, thereby reinstating the Department's denial of Rhonda

Duncan's request for a refund of retail sales tax she paid for that period.

FACTS AND PROCEDURAL BACKGROUND

In 2008, Rhonda Duncan opened a medical marijuana dispensary doing business

as The Compassionate Kitchen. Believing that her method of operation was not subject

to retail sales taxation, she did not collect sales tax on transactions with customers.[1] But

---

[1] In seeking a tax refund, Ms. Duncan asserted she provided consultation services
on the medical use of cannabis in exchange for donations. She claimed to have provided
medical cannabis to her customers free of charge. She abandoned that argument in

in light of the Department's contrary view, she reported retail sales revenue in 2009 and paid the required tax.

In 2011, Ms. Duncan filed an amended return for the January-December 2009 tax period and requested a refund of the $19,312.38 she had paid. The Department denied the refund request, and Ms. Duncan appealed to the Department's appeal division. It affirmed denial of the refund.

Ms. Duncan appealed to the Board of Tax Appeals. The only issue before the Board was whether pursuant to former RCW 82.08.0281 (2004)[2]—an exemption from retail sales tax for drugs dispensed to patients pursuant to a prescription—her sale of medical marijuana in 2009 had been tax exempt. In response to a motion for summary judgment, the Board ruled that the exemption provided by former RCW 82.08.0281 did not apply to sales of medical marijuana and affirmed the Department's denial of the refund request.

Ms. Duncan sought judicial review of the Board's decision by the Spokane County Superior Court. It concluded the sales were exempt from retail sales tax and reversed the Board. The Department appeals.

---

proceedings before the Board.

[2] An amendment in 2014 substituted language that the retail sales tax "does not apply" to such drug sales for prior language that it "shall not apply." LAWS OF 2014, ch. 140, § 19.

2

ANALYSIS

*Statutory background*

In 1971, the Washington Legislature enacted the Uniform Controlled Substances Act, chapter 69.50 RCW (UCSA), which made it a crime to manufacture, deliver, or possess marijuana. RCW 69.50.401-.445. The same activities are criminalized under federal law. 21 U.S.C. ch. 13; *Cannabis Action Coal. v. City of Kent*, 183 Wn.2d 219, 222, 351 P.3d 151 (2015).

In the 1998 general election, Washington voters approved Initiative 692 (I-692), which became effective December 3, 1998, and was later codified at chapter 69.51A RCW. Initiative 692, LAWS OF 1999, ch. 2. "By passing [I-692], the people of Washington intended that '[q]ualifying patients with terminal or debilitating illnesses who, in the judgment of their physicians, would benefit from the medical use of marijuana, shall not be found guilty of a crime under state law for their possession and limited use of marijuana.'" *State v. Fry*, 168 Wn.2d 1, 6-7, 228 P.3d 1 (2010) (second alteration in original) (quoting former RCW 69.51A.005 (1999)). RCW 69.51.040(1) created an affirmative defense to the crimes of providing or possessing marijuana used by qualifying patients.

In order to assert the affirmative defense, a qualifying patient or designated marijuana provider was required to present the patient's "valid documentation" to any law enforcement official questioning the asserted medical use of marijuana. Former

3

RCW 69.51A.040(4)(c). The definition of "valid documentation" has been amended since 1998; most recently, the legislature has replaced the term with "authorization." *See* LAWS OF 2015, ch. 70, § 17 (substituting "authorization" for "valid documentation") *codified as* RCW 69.51A.010(7).

Notwithstanding the amendments, the substance of the required documentation has remained the same. Relevant here, "valid documentation" was defined in 2009 as:

> A statement signed by a qualifying patient's physician . . . which states that, in the physician's professional opinion, the patient may benefit from the medical use of marijuana.

Former RCW 69.51A.010(5)(a) (2007).

Based on the law's requirement for a written physician authorization, Ms. Duncan argues that her sales of medical marijuana in 2009 were exempt from retail sales tax under RCW 82.08.0281(1), which exempts sales of drugs for human use dispensed "pursuant to a prescription." She concedes that medical marijuana authorizations are not "prescriptions" under the UCSA. *See* RCW 69.50.308 (identifying the requisites to dispensing a controlled substance). But she contends that the retail sales tax exemption provided by RCW 82.08.0281 uses a definition of "prescription" that is broader than that used by laws dealing with controlled substances—broad enough to encompass her customers' medical marijuana authorizations.

4

No. 33245-4-III
*Duncan v. Dep't of Revenue*

*Standard of review and construction of tax statutes*

The Administrative Procedure Act, chapter 34.05 RCW (APA) authorizes courts to grant relief from an agency order in an adjudicative proceeding in nine enumerated instances; here, Ms. Duncan obtained superior court review on the basis that the Board had "erroneously interpreted or applied the law." RCW 34.05.570(3)(d); Clerk's Papers (CP) at 92. Challenges to an agency's interpretation or application of the law are reviewed de novo. *Dep't of Revenue v. Bi-Mor, Inc.*, 171 Wn. App. 197, 202, 286 P.3d 417 (2012).

"In reviewing a superior court's final order on review of a Board decision, an appellate court applies the standards of the [APA] directly to the record before the agency, sitting in the same position as the superior court." *Honesty in Envtl. Analysis & Legis. v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd.*, 96 Wn. App. 522, 526, 979 P.2d 864 (1999). We do not give deference to the superior court's ruling. *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915, 194 P.3d 255 (2008).

In this case, the Board's task and our own is to construe the breadth of RCW 82.08.0281, including its definition of the term "prescription." "The court's fundamental objective in construing a statute is to ascertain and carry out the legislature's intent." *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). "'Under the "plain meaning" rule, examination of the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the

5

provision is found, is appropriate as part of the determination whether a plain meaning can be ascertained.'" *City of Seattle v. Allison*, 148 Wn.2d 75, 81, 59 P.3d 85 (2002) (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002)). Where the meaning of a statute is plain and unambiguous on its face, the court must give effect to that plain meaning. *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 52, 239 P.3d 1095 (2010). Only if a statute is ambiguous will we give substantial weight to the agency's interpretation of the statute it administers—here, the Department's interpretation. *Bi-Mor*, 171 Wn. App. at 202.

Because the statute we construe is a tax exemption, the burden of showing qualification for the tax benefit rests with the taxpayer. *Group Health Coop. of Puget Sound, Inc. v. Wash. State Tax Comm'n*, 72 Wn.2d 422, 429, 433 P.2d 201 (1967). Statutes providing for either exemptions or deductions "are, in case of doubt or ambiguity, to be construed strictly, though fairly and in keeping with the ordinary meaning of their language, against the taxpayer." *Id.* (citing *Crown Zellerbach Corp. v. State*, 45 Wn.2d 749, 278 P.2d 305 (1954); *Helvering v. Ohio Leather Co.*, 317 U.S. 102, 63 S. Ct. 103, 87 L. Ed. 113 (1942)).

### Tax provisions at issue

Under RCW 82.08.020, a retail sales tax is levied on each retail sale of tangible personal property unless a specific statute exempts the transaction from the tax. RCW

6

82.08.020; RCW 82.04.050. In 2009, the statutory exemption for the sale of prescribed

drugs provided:

> The tax levied by RCW 82.08.020 shall not apply to sales of drugs for
> human use dispensed or to be dispensed to patients, pursuant to a
> prescription.

Former RCW 82.08.0281(1) (2004). "Prescription" is a defined term for purposes of the

exemption:

> "Prescription" means an order, formula, or recipe issued in any form of
> oral, written, electronic, or other means of transmission by a duly licensed
> practitioner authorized by the laws of this state to prescribe.

RCW 82.08.0281(4)(a).

As previously noted, Ms. Duncan concedes that a medical marijuana authorization

is not a "prescription" within the meaning of controlled substance statutes. As pointed

out by the Department, this is no accident. A physician would violate UCSA and commit

a crime by "prescribing" marijuana as the term is used in UCSA. Both federal and state

statutes list marijuana as a schedule I controlled substance. Former RCW

69.50.204(c)(14) (2008); 21 C.F.R. § 1308.11(d)(19). And

> [c]ontrolled substances listed in schedule I under federal law may not be
> prescribed or dispensed anywhere in the United States unless a specific
> registration to do so is obtained to use the substance for research purposes.
> *See* 21 U.S.C. §§ 822-23, 872 (1981). *Marijuana cannot be legally
> prescribed, nor can a prescription for marijuana be filled by a pharmacist
> in Washington unless a federal registration is granted.*

*Seeley v. State*, 132 Wn.2d 776, 783, 940 P.2d 604 (1997) (emphasis added); RCW 69.50.308 (2001) (identifying the only manner in which controlled substances may be dispensed).

We agree with Ms. Duncan that we construe "prescription" for retail sales tax purposes based on its definition by RCW 82.09.0281(4)(a), however, not by how it is defined elsewhere. "It is an axiom of statutory interpretation that where a term is defined we will use that definition." *United States v. Hoffman*, 154 Wn.2d 730, 741, 116 P.3d 999 (2005).

The Department argues there are two grounds on which we should conclude that a medical marijuana authorization is not a "prescription" as defined by RCW 82.08.0281(4)(a). One—the argument adopted by the Board—is that a physician's medical marijuana authorization is not "issued . . . by a duly licensed practitioner authorized by the laws of this state to prescribe." The other is that a medical marijuana authorization is not an "order, formula, or recipe." We turn first to the reasoning that persuaded the Board.

### *Practitioners "authorized by [law] to prescribe"*

The Department persuaded the Board that a medical marijuana authorization is not a "prescription" in light of the last clause of the statutory definition: that it be issued "by a duly licensed practitioner *authorized by the laws of this state to prescribe*." RCW 82.08.0281(4)(a) (emphasis added). Ms. Duncan argues that plainly read, the definition

8

No. 33245-4-III
*Duncan v. Dep't of Revenue*

merely provides that as long as a practitioner is authorized by Washington law to

prescribe *something*, then the exemption applies to any order he or she issues—legally or

illegally—for a drug to be dispensed to a patient. "Everyone knows that Al Capone, for

example, was nailed for income-tax evasion, not for the bootlegging, loan-sharking,

extortion and prostitution that generated the income." *United States v. Ytem*, 255 F.3d

394, 397 (7th Cir. 2001).

The Department's argument persuaded the Board, whose final decision

characterized Ms. Duncan's reading as "either circular or vague." CP at 27.

> First, if the Taxpayer is contending that the definition requires only the
> authority to prescribe the order itself, the Taxpayer is ignoring the ordinary
> meaning of the verb "to prescribe": "to direct, designate, or order the use of
> as a remedy <the doctor *prescribed* quinine>." Practitioners do not
> prescribe a prescription; they prescribe medications. Second, if the
> Taxpayer is arguing that the practitioner need only have the authority under
> state law to prescribe *something*, then, as the Department observes, the
> Taxpayer is "interpret[ing] this last phrase in a vacuum" and "employ[ing]
> a simplistic reading" of the statute.

And:

> The Board concludes that, by its plain meaning, the statute defines a
> "prescription" as an order issued by a practitioner who is authorized to
> prescribe the drugs or devices referenced in that order.

*Id.* at 27-28 (alterations in original) (footnotes omitted).

We do not entirely agree. The verb "to prescribe" can be both transitive and

intransitive. A transitive verb is one that must take a direct object, while an intransitive

verb does not. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2428, 1186 (1993).

9

The transitive use of "to prescribe" is the one that the Board characterizes as its "ordinary meaning;" it means "**3** : to direct, designate, or order the use of as a remedy <the doctor *prescribed* quinine>." *Id*. at 1792. The object of the transitive verb "to prescribe" is the substance being prescribed.

Yet "to prescribe" can also mean "**2** : to lay down a rule: give directions: DICTATE, DIRECT **3 a** : to write or give medical prescriptions <~ for a patient> **b** : to give advice in the manner of a doctor giving a medical prescription." *Id.* This form does not take a direct object. So we cannot reject Ms. Duncan's argument on the basis that use of the verb "to prescribe" always implicates the substance being prescribed.

We agree with the Board, however, that it is not reasonable to read the prescribed drug exemption in a vacuum. The legislature has exempted from retail sales taxation only those drugs that are "dispensed to patients," "by a duly licensed practitioner authorized . . . to prescribe." RCW 82.08.0281(1), (4)(a). No duly licensed practitioner in Washington can legally prescribe marijuana. We may look to related statutes when determining a statute's plain meaning, *City of Seattle*, 148 Wn.2d at 81 (citing *Campbell & Gwinn, LLC*, 146 Wn.2d at 10), and we must avoid constructions that yield unlikely, absurd or strained consequences. *Kilian v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002). In carrying out our fundamental objective of ascertaining and carrying out the legislature's purpose, we cannot overlook the unlikelihood—indeed, the absurdity—that the legislature required a prescription to be issued by a "duly-licensed practitioner

10

authorized by the laws of this state to prescribe" but didn't care whether the prescription was illegal.

And the fact that criminals are liable for taxes on ill-gotten gains does not undercut our conclusion. It is not unlikely or absurd to infer a legislative intent to tax revenue or income from a criminal activity. It *is* unlikely and absurd to infer a legislative intent to bestow a tax benefit on such activity.

The Board concluded that the last clause of the definition plainly means that a "prescription" is an order issued by a practitioner authorized to prescribe the drug he or she prescribes. We are inclined to agree, but even if we found ambiguity, several principles would then support the Department's construction.[3] As earlier discussed, tax

---

[3] Ms. Duncan invokes the nearest-reasonable-referent canon of construction that, while not applied in plain meaning analysis, can be applied where a statute is ambiguous. *Overlake*, 170 Wn.2d at 52. It provides that "'[w]hen the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.'" *Goldberg v. Companion Life Ins. Co.*, 910 F. Supp. 2d 1350, 1353 (M.D. Fla. 2012) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 152-53 (2012)). Ms. Duncan argues the canon requires that we read the phrase "authorized by the laws of this state to prescribe" as modifying only "licensed practitioner," not the substance that the practitioner prescribes. As pointed out by the Board, however, her reliance on the canon "is unnecessary, since the Department also reads the phrase 'authorized . . . to prescribe' as modifying the word 'practitioner.'" CP at 27 (alteration in original).

11

exemptions, if ambiguous, are construed strictly, though fairly, against the taxpayer. *Group Health*, 72 Wn.2d at 429. Where a tax statute is ambiguous, we give substantial weight to the Department's interpretation. *Bi-Mor*, 171 Wn. App. at 202.

Finally, legislative history predating the tax period at issue supports the Department's interpretation of the statute's plain meaning. Before 2004, RCW 82.08.0281(4)(a) provided that a "prescription" was issued "by a duly licensed practitioner authorized by the laws of this state." By amendment in 2004, the legislature added two concluding words, "authorized by the laws of this state *to prescribe*." Former RCW 82.08.0281(4)(a) (LAWS OF 2004, ch. 153, § 108) (emphasis added). According to the Senate Bill Report, which described the legislation as intended to correct "errors, omissions, and inconsistencies," "[a] prescription for items or drugs that are exempt must be prescribed by a person whose license authorizes him or her to prescribe the item or drugs." S.B. REP. ON S.B. 6515, at 1, 3, 58th Leg., Reg. Sess. (Wash. 2004).

Bill reports may be relevant in the interpretation of a statute being enacted. *Dep't of Labor & Indus. v. Landon*, 117 Wn.2d 122, 127, 814 P.2d 626 (1991). For periods after the effective date of the change, the 2004 amendment and bill report support the Department's interpretation of "prescription" as requiring issuance by a practitioner

12

authorized to prescribe the drug prescribed.[4]

For the reasons stated, the Board properly concluded that sales of medical marijuana were not exempt from retail sales tax in 2009.

### *Order, formula, or recipe*

The Department also argues that a medical marijuana authorization is not an "order, formula, or recipe" as required by the retail sales tax provision's definition of "prescription," since an authorization "merely indicates that 'in the health care professional's professional opinion, the patient may benefit from the medical use of marijuana.'" Br. of Appellant at 22 (quoting former RCW 69.51A.010(5). It "does not indicate the type of product, the quantity, or dosage, all elements of a prescription." *Id.* at 23.

Ms. Duncan responds that a practitioner's order of a drug—a prescription in "the common parlance," as she describes it—"can be terse affairs," with "[DRUG] PRN" or

---

[4] The Department also relies on subsequent legislation explicitly excluding marijuana from the definition of drugs exempted from retail sales tax, which it argues was an intended clarification, LAWS OF 2014, ch. 140, § 19; and on 2015 amendments to chapters 69.51A and 82.02 RCW that clarified that a medical marijuana "authorization is not a prescription as defined in RCW 69.50.101," and explicitly exempted qualifying sales of medical marijuana from retail sales tax. RCW 69.51A.010(1)(c) (amended by LAWS OF 2015, ch. 70, § 17(7)(c), effective July 24, 2015); RCW 82.08.9998 (amended by LAWS OF 2015, 2d Spec. Sess., ch. 4, § 207, effective July 1, 2015). Ms. Duncan responds that these amendments "point out [her] argument quite nicely: without the amending language," she argues, "a grammatical fair-reading of the statute as it existed in 2009-10 excludes medical marijuana from taxation." Br. of Resp't at 11.

"as needed" sufficing. Br. of Resp't at 5, 7. She cites no authority in asserting that a prescription in common parlance need not contain specifics. As the Department points out, federal law requires that medical orders for dispensing controlled substances be specific:

> All prescriptions for controlled substances shall be dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, *the drug name, strength, dosage form, quantity prescribed, directions for use*, and the name, address and registration number of the practitioner.

Reply Br. at 4-5 (emphasis added) (citing 21 C.F.R. § 1306.05(a) (2015)).

And terse or not, there is still a difference between what Ms. Duncan characterizes as an order or prescription ("marijuana as needed") and a medical marijuana authorization ("patient may benefit from the medical use of marijuana"). The former is an instruction or directive to take marijuana as needed; the latter is a declaration of the practitioner's professional opinion.

The distinction is borne out by relevant dictionaries. The ordinary meaning of "order" is "to give orders to : COMMAND . . . : require or direct (something) to be done." WEBSTER'S, *supra*, at 1588. As a medical term, "order" is defined by *Taber's Cyclopedic Medical Dictionary* as meaning:

> Instructions from a health care provider specifying patient treatment and care. A directive mandating the delivery of specific patient care services.

TABER'S CYCLOPEDIC MEDICAL DICTIONARY 1678 (22d ed. 2013).

14

We conclude that the technical meanings of "order," "formula," and "recipe" are the appropriate meanings to apply. Where words carry special significance in a particular field, the court should resort to a technical definition. *See Tingey v. Haisch*, 159 Wn.2d 652, 658, 152 P.3d 1020 (2007). Because the exemption from retail sales tax is for "drugs for human use dispensed or to be dispensed to patients, pursuant to a prescription" issued by a "duly licensed practitioner," we are dealing with a particular field: the practice of medicine. RCW 82.08.0281(1); (4)(a).

Both *Taber's* and *Stedman's*[5] define "formula." *Taber's* defines it as "[a] rule prescribing ingredients and proportions for the preparation of a compound," and *Stedman's* defines it as "[a] recipe or prescription containing directions for the compounding of a medicinal preparation." TABER'S, *supra*, at 960; STEDMAN'S, *supra*, at 762.

Both medical dictionaries define "recipe." *Taber's* defines it, "Take, indicated by the sign ℞. **2.** A prescription or formula for a medicine. SEE: *prescription*." TABER'S, *supra*, at 1995. *Stedman's* defines it, "The superscription of a prescription, usually indicated by the sign ℞. **2.** A prescription or formula." STEDMAN'S, *supra*, at 1654.[6]

---

[5] STEDMAN'S MEDICAL DICTIONARY (28th ed. 2005).

[6] "Prescription," which both *Taber's* and *Stedman's* use in defining "recipe," is itself defined by both dictionaries. *Taber's* defines it as:

A written direction or order for dispensing and administering drugs. It is signed by a physician, dentist, or other practitioner licensed by law to

"Valid documentation" under former RCW 69.51A.010(5)(a) is not a command, instruction, or directive. Medical marijuana authorizations do not require or direct anyone to dispense marijuana. They do not specify or mandate treatment or services. They do not prescribe ingredients, proportions, or directions for compounding. There is no ℞ sign on the medical marijuana authorization forms in use in 2009. *See* Administrative Record at 111, 113. "Valid documentation"—stating only that a patient may benefit from the use of marijuana—is not an "order, formula, or recipe."

---

prescribe such a drug. Historically, a prescription consists of four main parts:
1. *Superscription*, represented by the symbol ℞, which signifies *Recipe*, meaning "take"
2. *Inscription*, containing the ingredients
3. *Subscription*, directions to the dispenser how to prepare the drugs
4. *Signature*, directions to the patient how to take the dosage; the physician's signature, address, and telephone number; the date; and whether the prescription may be refilled. When applicable, the physician's Drug Enforcement Administration number must be included.

TABER'S, *supra*, at 1901.

A written formula for the preparation and administration of any remedy. **2.** A medicinal preparation compounded according to formulated directions, said to consist of four parts: 1) *superscription*, consisting of the word *recipe*, take, or its sign, ℞; 2) *inscription*, the main part of the p., containing the names and amounts of the drugs ordered; 3) *subscription*, directions for mixing the ingredients and designation of the form (pill, powder, solution, etc.) in which the drug is to be made, usually beginning with the word, *misce*, mix, or its abbreviation, M.; 4) *signature*, directions to the patient regarding the dose and times of taking the remedy, preceded by the word *signa*, designate, or its abbreviation, S. or Sig.

STEDMAN'S, *supra*, at 1556-57.

For this additional reason, Ms. Duncan cannot establish that her retail sales fell within the exemption from taxation provided by RCW 82.08.0281.

The superior court's order is reversed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, J.

Pennell, J.

17